## No. 12,141.

CENTRAL SURETY AND INSURANCE CORPORATION, ET AL. *v.*
INDUSTRIAL COMMISSION, ET AL.

Decided October 22, 1928.

Mr. H. BERMAN, Mr. FRED N. HOLLAND, for plaintiffs in error.

Mr. WILLIAM L. BOATRIGHT, Attorney General, Mr. OTTO FRIEDRICHS, Assistant, for defendants in error.

*En Banc.*

MR. JUSTICE BUTLER delivered the opinion of the court.

THE Industrial Commission awarded workmen's compensation to Peterson P. Fugitt. The district court confirmed the award. The injury suffered by Fugitt was hernia. Section 80 of the Workmen's Compensation Act (C. L., § 4454, as amended by S. L. 1923, p. 744) provides: "An employee in order to be entitled to compensation for hernia must clearly prove: *first,* that its appearance was accompanied by pain; *second,* that it was immediately preceded by some accidental strain suffered in the course of the employment."

On October 27, 1927, Fugitt was working for plaintiffs in error Suwyn and Ritsema. He was mixing concrete for a walk extending from the sidewalk to the front porch of a house. It became necessary to move the mixer to the rear of the house to put in the rear walk and the driveway. He and two other men moved it early in the afternoon. It was "a little too heavy for three men, except on good ground." The ground at this place was

rough. There were only three men to do the work of moving the mixer and lifting the sacks of cement. It was heavy work. Fugitt previously had lifted cement sacks; that was his regular work. He had moved the cement mixer on other occasions, "usually with the help of two men, or maybe more." He did not notice at the moment of lifting that he had strained himself, but about an hour later he noticed that his abdomen was beginning to get sore. He thought at the time that it was caused by a large belt he was wearing; "it seemed like the belt was making it sore." A fellow workman noticed that around quitting time Fugitt was not feeling very good—did not look just right. The abdomen did not get very sore until about the time he went to bed the same day. The next morning he consulted a doctor, who advised him to take treatments to cause the swelling to subside. He followed directions, and on November 2, he was operated upon by another doctor. A few days before performing the operation the doctor examined Fugitt and saw a "bulging out," or a bump, in the abdomen. The operation disclosed the fact that Fugitt had an umbilical hernia, which, according to the doctor, "is a hernia that has forced its way through the umbilicus." The doctor testified that in adults it "is usually due to a severe strain, usually something that causes an increased intra-abdominal pressure, such as heavy lifting," and ordinarily is not due to other causes. The doctor found in the umbilicus a small opening through which a part of the peritoneum had forced its way, "making a weak point in the abdominal wall." That part of the peritoneum was about the size of a small marble. The opening in the fascia was large enough to allow the entrance of the tip of the fourth finger. There were no adhesions around the sack. The doctor testified that the abdominal wall is not weakest at the umbilicus; "that it is as weak at one point where any object leaves the abdominal cavity as it is at another"; that "the weakness is simply because something has passed through there, leaving a ten-

derness at those points.'' Fugitt testified—and his testimony is not contradicted—that he never before had any such trouble.

1. The facts would seem not only to justify, but to require, compensation, if the statutory provision quoted above does not forbid. Courts must give effect to that provision, just as they must give effect to other provisions of the statute; there is no reason, however, for singling out this particular provision and giving to it, and to it alone, a strict, narrow construction. The Workmen's Compensation Act is highly remedial, beneficent in purpose, and should be given a liberal construction, so as to accomplish the evident intent and purpose of the act. *Karoly v. Industrial Commission,* 65 Colo. 239, 243. In Corpus Juris, title ''Workmen's Compensation Acts,'' section 34, it is said that the courts have been practically unanimous in so construing such statutes. In the case of *In re Petrie,* 215 N. Y. 335, the court said: ''The statute was the expression of what was regarded by the legislature as a wise public policy concerning injured employees. Under such circumstances we think that it is to be interpreted with fair liberality, to the end of securing the benefits which it was intended to accomplish.''

2. The plaintiffs in error assert that there was no evidence that the appearance of the hernia was accompanied by pain. We must keep in mind the distinction between strain and hernia: the former is a cause; the latter, the effect. Hernia is a protrusion of any viscus or tissue through an abnormal opening in the cavity in which it is normally confined. Watson, Hernia. We must also note that the statute requires not the hernia, but the appearance of the hernia, to be accompanied by pain. Webster's New International Dictionary gives the following definitions: ''Appearance, 1. Act of appearing.'' ''Appear, 1. To come or be in sight; to be in view; to become visible. 4. To become visible or clear to the apprehension of the mind; to be known as a subject of observation or comprehension, or as a thing proved;

to be obvious or manifest." According to the doctor, the passing of something through the abdominal wall leaves a tenderness. About an hour after the strain, Fugitt noticed that his abdomen was beginning to get sore. Webster's New International Dictionary defines sore as "painful, tender." That Fugitt used the word in that sense is clear from the testimony of one of his employers, plaintiff in error Suwyn, that Fugitt told him, "I noticed, in the middle of the afternoon, a slight pain in my stomach." As the hernia was the protrusion of a part of the peritoneum through the umbilicus; and as such protrusion leaves a tenderness; and as Fugitt noticed soreness—pain—in his abdomen about an hour after the strain; the commission was justified in finding that the appearance of the hernia was accompanied by pain.

3. Was the hernia immediately preceded by an accidental strain? The plaintiffs in error contend that it was not. Two questions arise: Was there an accidental strain? If so, did it immediately precede the hernia?

(a) What is an "accidental strain"? The statute does not say "a strain caused by an accident," but an "accidental strain." Strain is thus defined: "The physiological effect or injury due to excessive tension or effort." Standard Dictionary. "To injure by pressing to excessive effort; distress or harm from overexertion, as he strained his back." *Id.* "To injure, as in the muscles or joints, by causing to make too strong an effort." Webster's New International Dictionary.

If a strain is unforeseen, unexpected and unintended, it is an accidental strain. Even where a statute uses the words "personal injury or death accidentally sustained," and "injury proximately caused by accident," we held, in *Carroll v. Industrial Commission,* 69 Colo. 473, 195 Pac. 1097, 19 A. L. R. 107, that, where the result was unexpected and unintended, it was an accident, saying that the term "accident" is often used to denote any unintended and unexpected loss or hurt apart from its cause. In that case, Carroll, who had organic heart trouble, was

engaged in pitching alfalfa hay in an enclosed building. The air was dust-laden, and this condition, together with the strenuous work in which he was engaged, brought on an attack of heart trouble, causing instant death. At page 475 we quoted with approval the following from 25 Harvard Law Review, 340: "Since the case of *Fenton v. Thorley,* nothing more is required than that the harm that the plaintiff has sustained shall be unexpected. * .* * It is enough that the causes, themselves known and usual, should produce a result which on a particular occasion is neither designed nor expected. The test as to whether an injury is unexpected and so if received on a single occasion occurs 'by accident' is that the sufferer did not intend or expect that injury would on that particular occasion result from what he was doing."

We then said that, "This is the rule followed in *Fidelity, etc. Co. v. Industrial Accident Commission of California,* 177 Cal. 614, 171 Pac. 429, L. R. A. 1918F, 856. It was there stated that the current of authority is that 'unforeseen, unexpected, and unintended injuries to employes have been classed as "accidents" and held sufficient to justify awards.' "

In *Ellermann v. Industrial Commission,* 73 Colo. 20, 213 Pac. 120, where a workman afflicted with heart disease fell dead while moving cement in a wheelbarrow, we held that if his death was due to overexertion arising out of the employment, and would not have occurred save for such employment, the overexertion was an accident.

In *Andrews v. Industrial Commission,* 73 Colo. 456, 216 Pac. 256, a workman, while digging in frozen ground, bruised his hand. The bruise became infected, and it became necessary to amputate a finger. In the opinion we said: "It is urged that the injury here in question, and the consequent infection, was not an accident as defined by the Workmen's Compensation Act. The contrary is established by well considered authority."

In *Fenton v. Thorley,* Law Reports, Appeal Cases, 1903, page 443, referred to in *Carroll v. Industrial Com-*

*mission, supra,* a workman employed to turn the wheel of a machine felt something which he described as "a tear in his inside," and it was found that he was ruptured. There was no evidence of any slip, or wrench, or sudden jerk. The injury occurred while the man was engaged in his ordinary work, and in doing, or trying to do, the very thing he meant to accomplish. It was held that it was an accident; that the expression "injury by accident" means simply an accidental injury, or accident, in the popular and ordinary sense of the words. Lord Macnaghten said:

"If a man, in lifting a weight or trying to move something not easily moved, were to strain a muscle, or rick his back, or rupture himself, the mishap in ordinary parlance would be described as an accident. Anybody would say that the man had met with an accident in lifting a weight, or trying to move something too heavy for him. * * * It does seem to me extraordinary that anybody should suppose that when the advantage of insurance against accident at their employers' ,expense was being conferred on workmen, Parliament could have intended to exclude from the benefit of the Act some injuries ordinarily described as 'accidents' which beyond all others merit favourable consideration in the interest of workmen and employers alike. * *' * A man injures himself suddenly and unexpectedly by throwing all his might and all his strength and all his energy into his work by doing his very best and utmost for his employer, not sparing himself or taking thought of what may come upon him, and then he is to be told that his case is outside the Act because he exerted himself deliberately, and there was an entire lack of the fortuitous element! I cannot think that that is right. I do think that if such were held to be the true construction of the Act, the result would not be for the good of the men, nor for the good of the employers either, in the long run. Certainly it would not conduce to honesty or thoroughness in work. It would lead men to shirk and hang back, and try to

shift a burthen which might possibly prove too heavy for them on to the shoulders of their comrades.''

In the same case Lord Robertson expressed himself as follows: ''It is not disputed that this man, being a person of ordinary strength, suffered personal injury while working at his employer's business, and because he applied such force to his work as to rupture him. Nor is it suggested that he hurt himself intentionally. The plain fact is that he miscalculated or by inadvertence did not compare the relative resisting forces of the wheel and his body. In this state of facts I am of opinion that this personal injury arose by accident out of and in the course of the man's employment.''

In *Clover, Clayton & Co. v. Hughes,* decided by the House of Lords in 1910 (Law Reports, Appeal Cases, 242), a workman suffered from aneurism. While tightening a nut with a spanner, he fell dead from a rupture of the aneurism. Lord Loreburn, delivering the opinion, said: ''The death was caused by a strain arising out of the ordinary work of the deceased operating upon a condition of body which was such as to render the strain fatal. * * * The first question here is whether or not the learned judge was entitled to regard the rupture as an 'accident' within the meaning of this act. In my opinion he was so entitled. Certainly it was an 'untoward event.' It was not designed. It was unexpected in what seems to me the relevant sense, namely, that a sensible man who knew the nature of the work would not have expected it. * * * No doubt the ordinary accident is associated with something external; the bursting of a boiler, or an explosion in a mine, for example. * * * I think it may also be something going wrong within the human frame itself, such as the straining of a muscle or the breaking of a blood vessel. If that occurred when he was lifting a weight it would be properly described as an accident. So, I think, rupturing an aneurism when tightening a nut with a spanner may be regarded as an accident.''

In *Gilliland v. Ash Grove Lime & P. C. Co.*, 104 Kan. 771, 180 Pac. 793, a man was seen beating a large rock with a sledge hammer in a manner habitual to the employment. Shortly thereafter he suffered a pulmonary hemorrhage, from which he died. There was no direct evidence of extraordinary exertion suddenly displayed. He did not know, or in any event he was inattentive to, the limited power of his blood vessels to resist blood pressure aggravated by vigorous muscular effort. "It seems quite clear," said the court, "that if, because of some unobserved defect, the car which the workman was loading had broken down under its usual weight of stone, the giving way of the physical structure of the car would have been called an accident. * * * The evidence warranted a finding that the physical structure of the man gave way under the stress of his usual labor. * * * Out of this ignorance or miscalculation of forces, came misadventure, and the term accident applies to what happened to him, as clearly as it would apply to what happened to the car had it broken down under the assumed circumstances."

In *Zappala v. Industrial Ins. Commission*, 82 Wash. 314, 144 Pac. 54, L. R. A. 1916A, 295, a workman suffered a hernia while pushing a heavily loaded truck. It was contended that no accident occurred that produced the injury; that inasmuch as the workman did not slip or fall, and nothing struck him, and nothing happened out of the ordinary, it could not be said that the hernia resulted from a fortuitous event. But the court held otherwise, saying: "The sustaining of an injury while using extreme muscular effort in pushing a heavily loaded truck is as much within the meaning of a fortuitous event as though the injury were the result of a fall or the breaking of the truck. To hold with the commission that if a machine breaks, any resulting injury to a workman is within the act, but if the man breaks, any resulting injury is not within the act, is too refined to come within the policy

of the act as announced by the legislature in its adoption and the language of the court in its interpretation."

In Workmen's Compensation Acts injuries are designated "accidents" to distinguish them from intentional injuries and injuries caused by disease. *Southwestern Sur. Ins. Co. v. Owens* (Tex. Civ. App.), 198 S. W. 662. So, also, such acts use the expression "accidental strain" in contradistinction to intentional strain. To constitute an accidental injury, it is not necessary that there should be anything extraordinary occurring in or about the work itself, such as slipping, or falling, or being hit. *Babich v. Oliver Iron Mining Co.*, 157 Minn. 122, 195 N. W. 784, 202 N. W. 904. See, also, *Poccardi v. Public Service Commission*, 75 W. Va. 542, 84 S. E. 242, L. R. A. 1916A, 299; *Bystrom Bros. v. Jacobson*, 162 Wis. 180, 155 N. W. 919, L. R. A. 1916D, 966; *Bell v. Hayes-Ionia Co.*, 192 Mich. 90, 158 N. W. 179; *Klika v. Independent School Dist.*, 166 Minn. 55, 207 N. W. 185; *Jordan v. Decorative Co.*, 230 N. Y. 522, 130 N. E. 634; *Crosby v. Thorp, Hawley & Co.*, 206 Mich. 250, 172 N. W. 535, 6 A. L. R. 1253; *E. Baggot Co. v. Industrial Commission*, 290 Ill. 530, 125 N. E. 254, 7 A. L. R. 1611; *La Veck v. Parke, Davis & Co.*, 190 Mich. 604, 157 N. W. 72, L. R. A. 1916D, 1277; *Patrick v. J. B. Ham Co.*, 119 Me. 510, 111 Atl. 912, 13 A. L. R. 427; 28 R. C. L. p. 787.

We have dwelt at some length upon this point lest a statement in the opinion in *Industrial Commission v. Hover*, 82 Colo. 335, 259 Pac. 509, should be misunderstood as holding to the contrary. We there said, at page 339, "He says explicitly that at the time he helped lift the box of bottles down he did not slip or become overbalanced or meet with any such sort of an accident." We did not intend to hold, nor did we hold, that in order to constitute an accidental strain, it was necessary that Hover should slip, or become overbalanced, or meet with any accident of such sort. We did not intend to hold, nor did we hold, anything contrary to the views expressed in this opinion. In that case there was a serious

question whether Hover sustained any hernia in the course of his employment. There was no evidence that there was any pain felt by him while lifting, or at any other time. He told his employer the next day that he had an accident the day before, that he got himself a brace, and that he was all right. He continued at work, and did not lay off on account of the hernia until about 18 months after the lifting. He did not file any claim for compensation until nearly 20 months after the lifting, which was some 14 months later than required by the statute. In the opinion, in detailing the facts and circumstances disclosed by the evidence, we used the language quoted above.

The evidence in the present case clearly shows that there was an accidental strain. The commission was right in so holding.

(b) Did the accidental strain immediately precede the hernia? In this connection, what is meant by the word "immediately"? Did the legislature intend to require the strain to precede the hernia instantaneously? Did it not rather intend that there may intervene between the cause and the effect an interval of time, short indeed, but still sufficient for the effect to follow the cause in the usual course of nature? In law, the word "immediately" has different meanings, depending upon the purpose sought to be accomplished. In *McLure v. Colclough,* 17 Ala. 89, 100, it is said that: "The word *immediately* is of relative signification, and is never employed to designate an exact portion of time. It is used with more or less latitude by universal consent, according to the subject to which it is applied." The word "immediately" has been held to mean "within a reasonable time," "as soon as practicable," "without unnecessary delay," "as soon as can conveniently be done," "as soon as may be." See Words and Phrases, Second Series. It has been held to mean "next in order." Thus, in *U. S. v. Baldridge,* 11 Fed. 552, where a statute required the counting of the votes immediately upon the closing of the polls, the court

held that "immediately" means that there shall be no unnecessary delay; that no other business shall intervene to occupy and distract the attention of the officers in charge until the matter in hand shall be consummated.

A fraternal order made a contract with a member to indemnify him in case of accident for injury that should immediately, wholly and continuously prevent him from the prosecution of any and every kind of business pertaining to his occupation. It was held that the word "immediately" is not synonymous with "instantly" and "without delay"; that a disability is immediate when it follows directly from an accidental hurt within such time as the processes of nature consume in bringing the person affected to a state of total incapacity to prosecute every kind of business pertaining to his occupation. *Order of United Commercial Travelers v. Barnes,* 72 Kan. 293, 80 Pac. 1020, 82 Pac. 1099, 7 Ann. Cas. 809.

In *Poccardi v. Public Service Commission, supra,* where the hernia was not discovered until the second day after a workman lifted a heavy iron pipe, the court said: "The article brought to our attention in the brief says traumatic hernia completely develops immediately or in a day or two after the blow. Common sense suggests that a rupture from a strain might develop more slowly than one caused by a blow."

The court was not construing a statute such as ours; but the case is useful as indicating that hernia caused by a strain does not always, if ever, develop instantaneously.

Giving the statutory provision a liberal, reasonable construction, as we should do, we hold that the evidence was sufficient to support the finding of the Industrial Commission that the hernia was immediately preceded by an accidental strain.

4. It is said that the case of *McPhee & McGinnity Co. v. Industrial Commission,* 67 Colo. 86, 185 Pac. 268, is controlling here, and requires a reversal. There are important points of difference between the facts in that

case, as stated in the opinion, and the facts in the present case. There it appeared that the claimant was doing light work (planing); that the doctor's certificate stated that "there is no direct history of any accident, such as lifting or straining"; that several years before that the claimant had a double hernia, for which he was operated upon; and that thereafter he wore a truss. These facts sufficiently distinguish that case from the present one.

5. That Fugitt suffered a hernia; that it was directly caused by strain; that the strain was accidental; that it occurred while he was engaged in moving a heavy object, a service arising out of and in the course of his employment; that the injury was proximately caused by accident arising out of and in the course of such employment, and was not intentionally self-inflicted,—all this, if not expressly admitted, is not denied, and has been clearly and abundantly proven by competent evidence. There is no evidence to raise even a suspicion of fraud in Fugitt's claim for compensation, or that the claim is otherwise than meritorious. To defeat such claim, counsel for the plaintiffs in error rely upon a strict, narrow, illiberal construction of the statutory provision concerning proof in hernia cases. The Industrial Commission found that Fugitt was entitled to compensation, and made an award in harmony with its findings. The district court confirmed the award. We believe that the findings are sustained by the evidence, and that the award and the judgment are right.

The judgment is affirmed.