No. 14,885.

GATES *v.* CENTRAL CITY OPERA HOUSE ASSOCIATION ET AL.
(108 P. [2d] 880)

Decided December 23, 1940.

94

Mr. Morris Rutland, for plaintiff in error.

Mr. Byron G. Rogers, Attorney General, Mr. Frank A. Bruno, Assistant, Mr. Wm. E. Hutton, Mr. J. P. Nordlund, for defendants in error.

*En Banc.*

Mr. Justice Otto Bock delivered the opinion of the court.

THIS proceeding was instituted under the provisions of the Workmen's Compensation Act. The findings and award of the Industrial Commission were adverse to claimant, and, in an appropriate action in the district court, were affirmed by that tribunal. They are as follows:

"Claimant was employed by the respondent employer herein at maximum wages as an artist and decorator. In October 1939 his work required that he do some painting in an arcade adjacent to the Teller House in Central City, Colorado. While performing these duties he was exposed to cold and windy weather which was common to that community and on October 12, 1939 his right hand and particularly the thumb and index finger of that hand became frozen.

"The claimant continued for some time after this date in his work and shortly thereafter came to Denver, Colorado and continued working until December 11, 1939 at which time the condition of his hand was such that he was unable to continue.

"At the time of the hearing it appeared that the extent of permanent disability which the claimant might sustain as a result of this freezing was not determinable.

"On October 12, 1939 at which time the frozen condition of the claimant's hand seems first to have manifested itself, the weather was not unduly cold with reference to the weather which had prevailed some days before and which prevailed for some days thereafter. Claimant had available to him near his work an electric hot plate or heater and was working immediately adjacent to the Teller House, an hotel, owned by the respondent employer and available to the claimant for the purposes of warming himself.

"It further appears from the evidence that the claimant had within his own discretion reasonable control over his hours of work and his methods of working.

"It, therefore appears from the evidence and the Referee finds that claimant has failed to carry the bur-

den of proving that his disability is the result of an accident sustained in the course of his employment and arising therefrom within the meaning of the Workmen's Compensation Act of Colorado.

"It is, Therefore Ordered: That this claim for compensation and medical benefits be and the same is hereby denied."

In the disposition of this case we need only to consider the assignments: The trial court committed error in not holding and adjudging that the uncontradicted evidence before the commission conclusively established that plaintiff in error, to whom we hereinafter refer as claimant, was subjected to unusual and excessive exposure, at a time reasonably certain, and that the resulting injury by freezing was accidental within the meaning of the Workmen's Compensation Act; that in making its said award the commission acted without and in excess of its powers and in violation of the statute of the state of Colorado.

 The findings and award were based upon the uncontradicted evidence of claimant, and the medical reports of his physicians. Findings which are not supported by the evidence or a reasonable and fair inference therefrom, form no basis upon which to predicate an award. If the undisputed evidence makes out a prima facie case, there is no need for a finding on "burden of proof." Such a finding is necessary only when there is a conflict in the evidence.

 It is conceded that freezing, under certain circumstances, may constitute an accident within the meaning of the act. The controversy here relates to whether claimant was exposed to an unusual hazard—which the employer asserts is necessary to constitute an accident—and whether the accident in question arose out of his employment. That the injury was incurred in the course of claimant's employment appears from the findings. Some of the findings, however, are challenged as not supported by the evidence. There are authorities to the

effect that unless freezing occurs when an employee is subjected to unusual exposure, not common to the community, the resulting injury is not accidental. There is much confusion on this subject in the reported cases, and the question is one of first impression with us.

We briefly review the facts: Claimant was employed as an artist, painting murals on an outside wall in an arcade adjoining the Teller House, an hotel in Central City, Colorado, operated by defendant in error, Central City Opera House Association, which we hereinafter designate as employer. The arcade was open at both ends, permitting the cold wind to sweep through it, and is described as almost a perpetual wind tunnel. While there employed on or about October 12, 1939, claimant froze his right hand, the thumb and index finger thereof with which he held the brush while painting being particularly affected, as a result of which he became disabled. This disability continued for a period of about three months. The weather was cold in Central City during the week of October 12, and colder in the arcade than outside of the structure. Claimant desired to do this work in the spring, but the employer insisted that it must be completed that fall. The extent of the disability which claimant may have sustained as a result of this freezing was not determined.

The first finding challenged as not supported by the evidence is that "While performing these duties he was exposed to cold and windy weather which was common to that community." An assertion that exposure of an artist to cold and windy weather, while painting murals in an arcade, which was called "a perpetual wind tunnel," was the equivalent of an exposure to "cold and windy weather common to that community" is incorrect. Common experience under such circumstances does not sustain it. The very fact that a hotplate was used by claimant to protect him from the inclement conditions indicates otherwise. To support a finding adversely, it necessarily would have to appear from the evidence that

all who were working outside with their hands at that time, in that community, were using a hotplate to prevent freezing. It cannot be even fairly inferred from the evidence that one who was using his fingers in painting murals in a windy tunnel is exposed to conditions similarly encountered by persons working outside. Moreover, it may be inferred that artists painting murals do not wear gloves. That the exposure of claimant was unusual is clearly established.

There is no evidence in the record upon which to base a finding that the employee was working adjacent to a hotel "available to the claimant for the purposes of warming himself." There is no evidence that the hotel at that time of the year was open or heated. Time and place considered, an inference to the contrary would be justified.

Another finding which is challenged was that claimant had "reasonable control over his hours of work." What really is the evidence bearing upon this issue? We quote:

"Q Were you [claimant] asked to complete this particular job? A Well, yes. I asked Ann to let it go until spring, because it was getting cold. The first snow had already happened in the mountains and your weather continually got worse. You can't tell.

Q What did she say? A She said no, she had a bad heart and with this funny war scare, and she said, 'You will probably be in the army if this thing goes on, and I want you to do it.' When Ann says jump, you jump.

Q That is Ann Evans, president of the Central City Opera Association? A That is right."

On cross examination:

"Q You said that you were directed by Ann Evans? A That is right. She wanted to get finished up.

Q To complete this work during the fall? A That is right.

Q She did not tell you you had to start at eight o'clock in the morning, or nine o'clock, or any time?

A I had worked for them so long I think it is taken for granted I go in about nine and quit about 5:30."

■■■ Can it reasonably be inferred from that evidence that claimant had control over his hours of work? We think not. Where an employee is required to work in the open and subjected to the hazard of freezing weather, he has no choice but to comply with the requirement or lose his job. To say that under these circumstances the freezing was the result of claimant's intentional exposure and should have been expected and foreseen by him, as contended by the employer, so as to preclude compensation for any ensuing injury, is not consistent with human experience. No employee wants to freeze his fingers, but he may take the risk, hoping thereby to continue to satisfy his employer's demands and his own urgent economic requirements. "Men are presumed to act according to their own interests." *Roberts v. People,* 9 Colo. 458, 474, 13 Pac. 630. "In workmen's compensation acts injuries are designated 'accidents' to distinguish them from intentional injuries and injuries caused by disease." *Central Surety & Insurance Corp. v. Industrial Commission,* 84 Colo. 481, 271 Pac. 617; *Keating v. Industrial Commission,* 105 Colo. 155, 157, 95 P. (2d) 821. To deny compensation under the facts in the case before us would in effect penalize the employee because of his loyalty to his employer, in completing the work within the time demanded. In our opinion, the evidence was sufficient to establish the fact that claimant had suffered an injury resulting from an "accident" within the meaning of the Workmen's Compensation Act. We do not hold that every injury by freezing is compensable within the meaning of the act. We do say, however, that when an employee is required to work under unusual conditions, in the open, so that injury from freezing may and does result therefrom, compensation should follow.

■■ Counsel for employer contends that the time of the accident is too indefinite to satisfy the law. The

commission found that it occurred on or about October 12, 1939. A time reasonably definite is all that is required. *Hallenbeck v. Butler,* 101 Colo. 486, 74 P. (2d) 708. The evidence here is sufficiently definite as to time. It further is argued that even though the evidence, as a matter of law, establishes an accident, such accident did not arise out of claimant's employment, and in support thereof counsel for employer quotes the following from 71 C.J., page 759, section 474: *"Frostbite or Freezing.* Injuries resulting from frostbite or freezing may be compensable as injuries arising out of and in the course of a workman's employment when he is, by reason of his employment, peculiarly exposed to the risk of such injuries, but not otherwise."

[8] By reason of his employment as an artist at the time and place, claimant was peculiarly exposed to the risk of freezing. Moreover, his exposure and risk were greater than would be that of a person in the community ordinarily engaged in doing outdoor work in cold weather. No other inference can properly be drawn from the evidence. In *Industrial Commission v. Anderson,* 69 Colo. 147, 169 Pac. 135, we said, quoting from *In re McNicol,* 215 Mass. 497: An accident " 'arises out of' the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury." In the present case "the conditions under which the work required to be performed" by claimant were unusual and not common to the community, and this constituted the causal connection between the work he was required to perform and the resulting injury.

[9] This is not a case where, on conflicting evidence or a reasonable inference to be drawn therefrom, the commission's findings are conclusive. Claimant's evidence, uncontradicted, made out a prima facie case, and any adverse inferences derived therefrom were not justified. Nothing in the record indicates that the credibil-

ity of claimant as a witness was questioned. His injury was accidental within the meaning of the Workmen's Compensation Act.

The judgment is reversed and the case remanded to the trial court, with directions to order the commission to ascertain the extent of claimant's disability and fix the amount of the recovery by appropriate award.

MR. CHIEF JUSTICE HILLIARD does not participate.