No. 15,336.

INDUSTRIAL COMMISSION ET AL. *v.* MENEGATTI.
(143 P. [2d] 274)

Decided November 8, 1943.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAW-RENCE HINKLEY, Deputy, Mr. ST. GEORGE GORDON, Assistant, Mr. ALIOUS ROCKETT, for plaintiffs in error.

Mr. LEROY J. WILLIAMS, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE YOUNG delivered the opinion of the court.

THE State Industrial Commission and the State Compensation Insurance Fund prosecute a writ of error to reverse a judgment of the district court setting aside an order of the commission denying compensation to the claimant, Joe Menegatti, and remanding the cause to the commission with directions to enter an award for compensation. The basis of the district court's decision is set forth in a specific finding "that there is no sufficient or competent evidence to sustain the award of the commission herein as to the finding that this claimant did not suffer a disability in his eyes as a result of the accident * * *."

The finding of the referee, which was affirmed, ap-

proved and adopted as the award of the commission was as follows:

"Claimant was employed as a night marshal by the above named respondent employer at an average weekly wage of $17.30 and was injured in an accident arising out of and in the course of his employment on July 2, 1941, sustaining an injury to both eyes. Claimant was off work less than ten days due to his injury.

"The Referee finds from the evidence that in accordance with his duties as a night marshal claimant had the duty of taking care of his employer's fire apparatus and that at the time of the above mentioned accident, claimant was acting in the course of his employment and in accordance with his duties.

"The Referee finds from the medical testimony that claimant now has a 60% loss of vision in his right eye and a 42½% loss of vision in his left eye. The Referee further finds from the medical testimony that this loss of vision was not due to claimant's accident but to myopia which was not caused by or aggravated by claimant's accident.

"It is, therefore, ordered: That the respondents pay for the necessary medical, surgical and hospital expense incurred within four months and not to exceed $500.00."

The specification of points presents the issue of whether the finding of the commission that the myopia (nearsightedness) was not caused or aggravated by the accident is supported by the evidence. If that finding is so supported, the judgment of the district court setting the finding aside is erroneous; if not so supported, the judgment of the district court should be upheld. A determination of this question will indicate the proper disposition of the case.

It appears from the evidence that claimant was night marshal of the town of Central City, charged with the duty of looking after and driving the chemical fire engine and aiding in the extinction of fires in the city and vicinity. July 2, 1940, he was so engaged in connection

with a fire at the shaft house of the Williams mine. The valve in the chemical tank on the fire truck was stuck and in an attempt to release it the handle was broken. Claimant then removed the cap from the tank and in some manner the two chemicals, one of which was sulphuric acid, were prematurely mixed together causing an explosion which forced the liquid out through the opening of the tank onto claimant's face and into his eyes. Claimant was temporarily blinded. He fell from the truck and was taken to a doctor in Idaho Springs, who administered treatment, and thereafter the services of an occulist in Denver were engaged, who furnished additional treatment, examined his eyes and fitted him with glasses. Such examination disclosed that plaintiff was afflicted with myopia and that due to this condition he had a sixty per cent loss of vision in his right eye and a 42½ per cent loss in the left eye.

The controlling issue in the case is the factual one of whether the myopical condition of claimant's eyes was caused or aggravated by the accident. His testimony is, that prior to the accident he had had no trouble with his eyes and did not need to wear glasses; that since the accident it has been necessary for him to wear glasses; that he did not know whether with glasses he could see as well as he could before the accident or not, although with glasses, as he expressed it, "I can see good." From the record it appears that claimant was blindfolded for five days and had to wear dark glasses while he was being treated for his injuries. The occulist consulted in Denver, Dr. McKeown, who first saw claimant a week after the accident, testified that on examination he found there was a marked congestion of both eyelids and conjunctivitis of the eyeball and upper lids; that a soothing ointment was given which seemed to relieve claimant; that "in about a week's time he recovered and the congestion was very much improved." On the first visit to Doctor McKeown's office, claimant complained of poor vision, which the doctor states he took to result from

the irritation that existed. Claimant still complained of defective vision after the inflammation had subsided and further examination disclosed that he was nearsighted, with a slight amount of astigmatism. On being asked whether claimant's present condition of nearsightedness was caused by the explosion, the doctor answered that he could not see how a person could answer that positively; on being asked whether it was the probable cause, he stated that he thought it was the probable cause. On cross-examination he qualified this latter statement by saying that he thought it was nothing more than a possibility that the accident might have caused the eye condition. When claimant was discharged as a patient, there was no remaining evidence of traumatic injury to the eye. The case was referred to another occulist, Dr. Danielson, who examined claimant and reported on his condition, but suggested a further examination to rule out the possibility of the eye trouble being related to a stomach condition or to diabetes. This suggested examination, when made by Dr. Yegge, disclosed no stomach condition or diabetes that would account for the eye deficiency.

In a written report based on his examination, after setting forth technically and in detail his findings, Dr. Danielson summarized his findings and gave an opinion as follows:

"The abnormalities observable in the patient's eyes are (1) a scar of the left cornea, (2) very incipient cataracts of each eye and (3) myopia.

"In view of the fact that the corneas are in such excellent condition and bear evidence of practically no damage, it seems extremely improbable that there could have been enough damage to the eyes by the accident to produce the myopia (nearsightedness) which is present. The nearsightedness could be produced only by some lengthening of the eyeball or by some change in the shape of the lens and it does not seem at all reason-

able that either could have been produced by only a moderate burn of the anterior surface of the eyeball.

"The lowered uncorrected vision that the patient has is due to the myopia. This myopia is a very common occurrence in normal eyes. The fact that a person has nearsightedness in no way, of course, points to the fact that he has had an accident. I believe that he had a large part, if not all, of this myopia before the accident and that his vision was poorer before the accident than he now believes it was. He has had no accurate test of his visual acuity previous to the accident other than that roughly given for a driver's license. There is a possibility, however, that his nearsightedness may have come on in the last few months entirely independent of the accident and the only relationship is probably a coincidence. This nearsightedness could be a part of his incipient cataracts, for it is a well known fact that as cataracts develop, people will often become more nearsighted.

"I see no reason whatsoever for believing that these cataracts would be secondary to a burn of the cornea. There was not sufficient contusion at the time of the injury to have produced any lens changes."

While Dr. Danielson admitted in his testimony that trauma might cause a cataract, he testified that a cataract due to a contusion is usually of a totally different type from that found in claimant, and that in his opinion claimant had no permanent disability of the eye in any manner referable to the accident. He further expressed it as his opinion that claimant had a temporary disability probably, but no permanent injuries resulting from the accident.

The only other testimony tending to throw light on the condition of claimant's eyes prior to the accident was that of an employee of the highway department who gave examinations for automobile drivers' licenses in Gilpin county. About eleven months before the accident, claimant had taken such an examination which was con-

ducted by means·of charts read at a distance of twenty feet, and the examiner testified that claimant read down to and including the 20/20 line without glasses, which indicates normal vision. On the foregoing record the commission made its finding.

■ We have announced in these cases, too often to require citation of authority, that findings of fact by the Industrial Commission which are supported by competent evidence are binding on all courts. Counsel for claimant does not controvert this established rule, but contends that there is no competent evidence in the record that claimant's disability was not caused by the accident and that there is uncontroverted competent evidence that it was so caused. We have held that the situation under which counsel for claimant bases his contention must exist before a court is authorized to direct a finding of fact by the commission. *O. P. Skaggs Co. v. Nixon,* 97 Colo. 314, 50 P. (2d) 55; *Industrial Commission v. Wetz,* 100 Colo. 161, 66 P. (2d) 812.

■ Based on a careful examination and consideration of the record we are of the opinion that the evidence in this case is not of such character as to require a holding that the disability occasioned by the condition of claimant's eyes, myopia, was the result of what the commission found was an accident arising out of and in the course of claimant's employment. When testimony is of such character as to reasonably support different inferences based upon it, the drawing of the inference is the function of the commission and a conclusion based on such an inference when so drawn will be considered as supported by the evidence. A case on which claimant relies, *Gates v. Central City Association,* 107 Colo. 93, 108 P. (2d) 880, takes note of such a situation, for in that opinion it is stated: "Findings which are not supported by the evidence *or a reasonable and fair inference therefrom,* form no basis upon which to predicate an award." The converse of this statement is equally true.

■ The instant case is distinguishable from *Gates v. Central City Association, supra,* in that the issue in that case was whether the admitted disability, freezing of claimant's hand, under the circumstances disclosed, constituted an accident, whereas in the instant case the happening of an accident is unquestioned, but there is a question in the instant case as to whether the accident was the cause of the disability, viz., the myopia subsequently found to exist. The question of whether the accident caused the defective vision is one to which the testimony of medical experts is particularly relevant. In view of the testimony of Doctor McKeown that it was a probable cause, later qualified by the statement that it was no more than a possible cause, and the finding of the other physician that incipient cataracts existed and his definitely expressed opinion that there was no causal relationship between the accident and the myopia, we think that the evidence was of such character as to permit the drawing of different inferences therefrom by reasonable men. The drawing of these inferences was the exclusive province of the commission under its delegated power to find the facts. It was error for the district court to nullify the findings of the commission on the controlling issue and remand the case to it with directions "to enter an award allowing compensation to the claimant."

Judgment reversed.

MR. JUSTICE GOUDY not participating.