No. 16,261.

MERRIMAN ET AL. *v.* INDUSTRIAL COMMISSION ET AL.
(210 P. [2d] 448)

Decided September 6, 1949.   Rehearing denied October 3, 1949.

Messrs. Wood, Crager & Ris, for plaintiffs in error.

Mr. John W. Metzger, Attorney General, Mr. Joseph E. Newman, Deputy, Mr. Donald C. McKinlay, Assistant, for defendant in error Industrial Commission.

*En Banc.*

Mr. Justice Hays delivered the opinion of the court.

William H. Fitch, a filling station attendant, filed with the Industrial Commission a claim for workmen's compensation benefits against his employer and the latter's insurer, plaintiffs in error, hereinafter designated as respondents, for injuries sustained by him in an accident arising out of and in the course of his employment. The injuries allegedly occurred when he slipped upon a grease spot and fell upon the cement pavement.

The Commission found:

"That the claimant sustained an accident arising out of and in the course of his employment on May 1, 1948, when on that day he slipped and fell in a sitting position on concrete. His average weekly wage was $50.00. He left work as a result of his injuries on May 1, 1948. During his temporary total disability he suffered pain in his lower back and spine. He returned to work May 9, 1948, but was unable to continue, and left work again May 16, 1948. He was hospitalized and on June 1, 1948, his left kidney was surgically removed. It was found that his kidney was diseased as a hydronephrosis.

"On May 3, 1948 and on the following day, claimant passed blood in his urine. From this and other facts, the Referee finds that the claimant's accident precipitated

symptoms of his hydronephrosis, and resulted in his being operated on June 1, 1948.

"Claimant was able to return to work on August 11, 1948, and has sustained no permanent disability as a result of his accident.

"It is, therefore, ordered: That the respondents pay compensation to the claimant at the rate of $17.50 per week from May 20, 1948 to August 10, 1948, inclusive, for and on account of his temporary total disability.

"It is further ordered: That the respondents pay for the necessary medical, surgical and hospital expense incurred as a result of said accident within four months from the date thereof and not to exceed $500.00 in value."

The district court upheld the above findings and entered judgment in accordance therewith. Plaintiffs in error urge reversal of the judgment upon two grounds: (1) "The evidence does not support the findings of the Industrial Commission that claimant's operation and disability was proximately caused by his accident of May 1, 1948;" (2) "The findings of fact do not support the award of the Industrial Commission." Counsel for respondents concede that the latter are liable under the Workmen's Compensation Act for compensation arising from disability proximately caused by claimant's accident, but deny that the accident here under consideration was the proximate cause of claimant's disability.

The portion of the above findings here challenged is: "Claimant's accident precipitated symptoms of his hydronephrosis, and resulted in his being operated on June 1, 1948."

We deem it unnecessary, under the circumstances disclosed, to review all of the evidence. It is sufficient to state in connection therewith that four doctors who examined claimant admittedly were unable from a preoperative diagnosis to determine the nature or extent of claimant's injuries and advised an exploratory operation,

during which claimant's pre-existing condition, above described, was disclosed.

We have held that, "The fact of claimant's pre-existing condition of arthritis and its being a contributing factor to his disability does not preclude payment of compensation." *Kamp v. Disney,* 110 Colo. 518, 135 P. (2d) 1019. In *Spirakoff v. Pluto Co.,* 105 Colo. 552, 100 P. (2d) 154, we stated, "An aggravation of a pre-existing abnormal or diseased condition may be the basis for an award of compensation." In still another case we held that the Industrial Commission, where there is a pre-existing disease, should determine, among other things, whether or not such pre-existing condition was aggravated by the injury. *Industrial Commission v. Dorchak,* 97 Colo. 142, 47 P. (2d) 396.

Counsel for plaintiffs in error contend that there is no evidence herein justifying a finding that claimant's condition was aggravated by his fall or that the course of his disease was in any manner accelerated thereby.

Under the circumstances here considered, in the light of the provisions of section 330, chapter 97, '35 C.S.A. (Supp.), we are convinced that, regardless of any aggravation of claimant's pre-existing condition, he was entitled to recover the amounts he expended for surgical and hospital treatment which was deemed by competent physicians reasonably necessary to relieve him from the effects of the accident, and he also was entitled to recover for the disability resulting from the operation.

The above conclusion is not changed by the fact that the surgical treatment here involved, contrary to the preoperative diagnosis, was not performed to relieve from the effects of the accident, but rather, as subsequently discovered, was needful to relieve from the pre-existing disease. The commission made a finding, based upon competent evidence, that the operation was necessary as a result of the accident, and found, in effect, that all disability following the operation resulted naturally from the accident. The above circumstances

clearly show the causal connection between the injury, the operation, and the disability, and in those respects meet the requirements set forth in *Aetna Casualty & Surety Co. v. Industrial Commission,* 116 Colo. 98, 179 P. (2d) 973.

The judgment of the trial court is accordingly affirmed.

MR. JUSTICE JACKSON dissents.

MR. JUSTICE JACKSON dissenting.

I believe the four cases cited in the majority opinion do not support the result there announced. In all those cases there was a pre-existing illness or malady and a subsequent injury incurred in the course of the employment; recovery for the injury was allowed or disallowed on the basis of whether the injury aggravated an already existing disease, or whether the pre-existing disease was the sole cause of claimant's disability.

Thus in *Industrial Commission v. Dorchak,* 97 Colo. 142, 47 P. (2d) 396, there was a finding that the claimant was injured September 3, 1932, when he slipped and fell backwards to the pavement while attempting to move a case containing one dozen quart bottles of milk, the case striking his chest. His injury was to his chest, cervical region of the spine, and back of his head. The decision in this case is discussed later.

In *Spirakoff v. Pluto Coal Mining Co.,* 105 Colo. 552, 100 P. (2d) 154, there was a finding that the claimant was afflicted with a small indirect hernia on the left side at the time he entered the employment. This hernia was non-disabling, but subsequently, in the course of his employment, claimant slipped and fell and immediately experienced pain. An examination disclosed that the hernia had become strangulated, necessitating an operation, and recovery of compensation was allowed on the ground that the accident aggravated a pre-existing physical defect.

In *Kamp v. Disney,* 110 Colo. 518, 135 P. (2d) 1019, the claimant sustained injuries to his back while helping to move a piano up a flight of stairs. In that case there was a pre-existing condition of arthritis, which was found to have been aggravated by the injury.

In *Aetna Casualty & Surety Co. v. Industrial Commission,* 116 Colo. 98, 179 P. (2d) 973, the employee, in the course of his employment, was handling barrels of oil and, while so engaged, sustained an injury diagnosed as an umbilical hernia. After a subsequent operation, made necessary by the hernia, employee died, the cause of death being attributed to "thrombosis and other heart ailments." There being no finding by the Industrial Commission of a causal connection between the injury, the operation, and the "thrombosis and other heart ailments" from which death resulted, it was held that no compensation could properly be awarded, and the judgment of the trial court was accordingly reversed.

In the instant case the claimant, in the course of his employment as an attendant at a filling station, slipped and fell but, *unlike the four cases relied upon in the majority opinion. there is no finding by the Industrial Commission of a definite injury* occurring separate and apart from the pre-existing malady and having the effect of aggravating the latter. In other words, there was no finding that the fall caused a hernia or resulted in a pre-existing hernia becoming strangulated, or that it fractured any bones—thereby causing a compensable injury. Instead, the finding of the Commission was: "From this and other facts, the Referee finds that the claimant's accident precipitated symptoms of his hydronephrosis, and resulted in his being operated on June 1, 1948." There is thus neither a finding of an independent injury, nor a finding of an injury that aggravated a pre-existing disease. It is clear that the Industrial Commission in the instant case has failed to comply with the directions of our court which, through Mr. Chief Justice Young, were laid down in *Industrial Commission v. Dor-*

*chak, supra.* After stating that the right to compensation exists where an accident has caused an aggravation of a pre-existing disease, we there said: "The commission should determine and set out in its finding: (a) Whether there was a pre-existing diseased condition; (b) what that diseased condition was; and (c) whether it was aggravated by the occurrence shown in evidence and relied upon as an accidental injury." We reversed the judgment of the trial court for lack of such finding. It will be noted that in the instant case the evidence clearly shows a pre-existing pathological condition to which reference is made in the finding of the Commission, which also identifies it as "the left kidney diseased as a hydronephrosis;" but nowhere is there a finding that the hydronephrosis was aggravated by the accidental fall. In fact, no injury whatever from the accident is shown in the finding of the Commission—the pain in the back and the passing of blood in the urine after the fall being referred to as symptoms of the hydronephrosis. Such finding was in accord with the evidence, as appears from the following testimony of the one doctor who was examined:

"Q. Doctor, can you state if the trauma caused such aggravation to the tumor requiring removal, or was it removed as otherwise indicated, by the size and nature of the tumor? A. Well, I couldn't say. I might feel that the jolt that the kidney got at the time of the fall would precipitate the pain and make the symptoms progress faster, yes. "Q. Do I understand you, then, that the trauma itself caused the symptoms to appear? A. Oh, I don't say—I say I don't know that they did. I say it could possibly be that the jolt he received might have jolted the tumor in such a way as to make it be—make it bleed and to make it appear—make the pain to appear in his back. He hadn't any history of backaches previously that I have elicited. Maybe he had, but the fall might have precipitated some of the symptoms, but it didn't change the diagnosis of the mass. Q. Didn't change

the nature of the mass? A. No, the laboratory says not. Q. Then the trauma caused the symptoms to appear which caused the condition of the tumor? A. I wouldn't say that. I say it could. Q. I see.

"The Referee: Doctor, is it true that a fall such as this man had could, in many instances does, result in displacement of a normal kidney? A. That's right. I was looking for a dropped kidney. A kinking of the urethra would cause a backache and that is the reason I suggested a pilogram, feeling that the kidney had been displaced. Now, by the same conclusions you might say that the mass was displaced and some of the backache could have been caused from the drainage from that kidney. However, the kidney was not acting normal at that time. "Q. (By Mr. Ris) Do you know if there was any evidence of displacement of the kidney discovered on surgery, or could that be discovered? A. Well, the mass displaces the kidney, and we knew that before the operation, by the pilogram. The x-ray showed there was deformity at the kidney, a deformity at the pelvis of the kidney. That is what led to the operation. Q. So this displacement of the part of the kidney by the mass, that was due to the gradual growth of the tumor, rather than due to the trauma? A. Yes, it is a mass that incorporates the whole kidney right in it. It is hanging on the kidney. Q. Regardless of the existence of the trauma that tumor was due to come out just as soon as it was discovered, is that true? A. Oh, yes, the sooner the better. Q. And it is possible that this trauma did cause some shifting there so that there were some symptoms which led to the discovery of the tumor? A. I believe that is very possible, yes. Q. Is it also as equally possible that these symptoms would have appeared at that time in the absence of trauma? A. Yes, they can appear at any time when a tumor is that size."

The doctor further testified that the claimant had made a complete surgical recovery. "Q. (By Mr. Ris) Did I understand you correctly that it was evident that

the left kidney had already ceased to function normally? A. Yes. This tumor inhibits its normal function. The kidney is healed now, but it is rather inclined to be fibrosis so it can't function normally. Q. Was there any evidence, Doctor, that this particular trauma caused the kidney to function less than it had been? A. No. Q. Then as I get your opinion, the trauma acted on this mass, consisting of the tumor, in such a manner that it caused to appear— A. I think it probably did. It might. I believe that the fall precipitated the symptoms of his back— Q. But is it possible that it might have appeared at that time otherwise? A. The same symptoms would have appeared sooner or later. They do in all hydronephrosis. Probably the fall precipitated the appearance at that time. I couldn't say definitely. Q. The fall itself did not make the tumor any worse, nor the kidney? A. No."

Counsel for the Commission argues that the clause which the Commission adopted, "The referee finds that the claimant's accident precipitated symptoms of his hydronephrosis and resulted in his being operated on June 1, 1948," is the equivalent of saying, "Plaintiff's accident aggravated his hydronephrosis and caused the operation on June 1, 1948." I do not agree with this contention. A change of physical condition may very well disclose symptoms of a disease without aggravating it. Thus a hot or warm bath sometimes precipitates the symptoms of measles without at the same time aggravating that disease. The evidence of the doctor, upon which the referee's findings are based, discloses that very difference when he testified that the fall might have precipitated some of the symptoms, but at the same time he said that the fall itself did not make the tumor or the condition of the kidney any worse. His testimony supports the actual finding of the Commission; but it would not support a finding that the accident aggravated the disease.

This distinction finds support in *Scarborough v. Beardmore et al.*, 52 Ida. 180, 12 P. (2d) 771. In that case the

Industrial Accident Board found that claimant's attempt to lift the steel shafting on March 1, 1929, "aggravated the symptoms of arthritis to such an extent that ever since that time he has been totally disabled for work." The court, commenting on this finding, stated, "In short, the board found Scarborough was disabled on account of pain in the back, and that certain symptoms were aggravated, not that the disease itself was aggravated or that it caused pain in the back. The findings are not sufficient to sustain an award." The Supreme Court of Idaho thereupon reversed the judgment of the District Court and remanded the proceeding to the Industrial Accident Board to make a proper finding.

In *Scarborough v. Beardmore,* 55 Ida. 229, 41 P. (2d) 290, the same matter came before the Idaho Supreme Court again. From a reading of that case it appears that the Industrial Accident Board, in response to the directions of the Supreme Court, made a finding, "That the osteoarthritis which said Charles Scarborough had in his back was not caused by, or exacerbated, aggravated or accelerated by any accident or injury sustained by him on said first day of March, 1929, or at any other time, or at all, while in the employ of the defendant, Charles W. Beardmore; that the only aggravation which was caused by the lifting was to the symptoms of osteoarthritis which said Charles Scarborough had." The Board accordingly denied compensation and the District Court and the Supreme Court affirmed.

These two cases appear not to have been modified or reversed, and illustrate in the legal field, just as the hot bath in the early stages of measles does in the medical field, the difference between the instant case and the numerous cases where there had been a finding that a pre-existing disease has been aggravated or accelerated.

It is argued that all the foregoing applies to situations where no intervening surgical operation has been performed, but that where surgery, medical aid and hospitalization occur the rule should be different. The cases

cited in the majority opinion make no such distinction. This court has held that medical expense paid for a claimant under the Workmen's Compensation Act is compensation within the meaning of the act, *Morey Merc. Co. v. Flynt,* 97 Colo. 163, 47 P. (2d) 864, and that a claim for medical expenses is allowed only for an injury arising out of and in the course of the employment, Ibid. An employer is required by the act to pay medical expenses only in cases in which he would be charged with the duty of paying other compensation, Ibid.; *Industrial Commission v. Globe Indemnity Co.,* 74 Colo. 52, 218 Pac. 910, cited in notes: 78 A.L.R. 1271, 1281. In the instant case, the authorities quoted indicate that the findings are not sufficient to support an award for other forms of compensation; hence the application of the foregoing rule demands that the findings be held insufficient to support the award in this case. This would seem to be proper in theory, as well as by authority, for in the instant case, unlike so many other cases in this field, no separate injury has been shown, such as a fractured bone or injury to an organ of the body, but simply a precipitation of the symptoms of a pre-existing disease. We held in *Thompson Grocery Stores Co. v. Industrial Commission,* 85 Colo. 576, 277 Pac. 789, that the Industrial Commission may not disregard the provisions of section 4425, C.L. 1921 (section 330, chapter 97, '35 C.S.A.), pertaining to medical, surgical and hospital aid and "impose upon the employer or insurance carrier, a burden greater than that fixed by statute." That also was a case where it was held that the findings of the Industrial Commission would not support the award, and we said: "What might have happened, if the medical and surgical services had not been continued, is interesting as a possibility, but we, and the commission, are concerned with actualities, rather than possibilities or probabilities."

It has already been seen that none of the four cases relied upon in the majority opinion are applicable to the facts in the instant case. It should now be noted that

the majority opinion does not appear to be consistent with its own ruling. For instance, the first sentence of its concluding paragraph reads: "The above conclusion is not changed by the fact that the surgical treatment here involved, contrary to the preoperative diagnosis, was not performed to relieve from the effects of the accident, but rather, as subsequently discovered, were needful to relieve from the pre-existing disease." This sentence clearly shows that the operation was "not performed to relieve from the effects of the accident," but "was needful to relieve from the pre-existing disease." The next sentence then approves the finding of the Commission that all disability following the operation resulted naturally from the accident—a conclusion quite at variance with the conclusion in the first sentence above quoted.

I believe, therefore, that the judgment of the trial court should be reversed, and the cause remanded with instructions to return the case to the Industrial Commission so that the latter can make findings and an award that are harmonious—the Commission being free at its option to conduct further hearings in the matter. *Industrial Commission v. Dorchak, supra;* and *Scarborough v. Beardmore, supra.*