No. 17,996.

J. W. METZ LUMBER COMPANY, ET AL. *v.* HERBERT TAYLOR
AND THE INDUSTRIAL COMMISSION OF COLORADO
(302 P. [2d] 521)

Decided October 8, 1956.   Rehearing denied November 5, 1956.

· Messrs. WOOD & RIS, for plaintiffs in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E.
HICKEY, Deputy, Mr. PETER L. DYE, Assistant, for defend-
ant in error Industrial Commission of Colorado.

*En Banc.*

MR. JUSTICE BRADFIELD delivered the opinion of the
court.

THIS is an Industrial Commission case here on a writ of error to the district court of the City and County of Denver. One Herbert Taylor, an employee of the J. W. Metz Lumber Company, filed his claim for compensation under the Workmen's Compensation Act for compensation resulting from an alleged accident on May 12, 1955, at his employer's lumber yard. Consolidated Underwriters was the employer's insurer and is a party herein. The claim was referred to a referee of the Industrial Commission of Colorado who, after a hearing, found for claimant Taylor and awarded compensation. A petition for a review of the referee's award was filed and denied. The claim was then referred to the Commission which affirmed the referee's order as a final award. A petition for a review of the Commission's finding was filed with the Commission and denied. Thereupon an action was filed in the district court of Denver to set aside the final award of the Commission. The matter was tried to the court which entered its judgment affirming the award of the commission. A motion for a new trial was dispensed with. The employer brings this writ of error for a review of the judgment of the district court.

For reversal of the judgment, the employer urges:

A. There is no evidence of an accidental injury.

B. There is no evidence of disability proximately caused by accidental injury.

Claimant Taylor testified:

"A. I was taking two by fours out of a boxcar into a truck to transfer to the lumber yard. * * * Q. Did you have any accident on that day (May 12)? * * * A. What do you mean, accident? It just came on me while I was working. I didn't slip, I didn't fall, or anything; it just came on me. * * * A. May 12th is when my accident happened, and I went home for the balance of the week and the doctor said that I could go to work again if I done light work; and the management gave me light work to do in the office. * * * A. I reported back the

(May) 16th. * * * Q. Then from May 16th on to October 10th you continued to work * * *? A. Yes."

Claimant testified that after his return to work on May 16th, he waited on customers, filled "bins and things that were low in stock," and as he improved, began going out into the yard on occasion and lifted sacks of cement into cars.

"Q. Then you were off again on October 10th? A. Yes. I worked the morning of the 10th, and reported to the doctor and he said no more labor."

Claimant further testified that by September 22, 1955, he was again doing heavy work, picking rebars, being reinforced steel used in concrete "twenty feet long and pretty heavy," from the ground and putting them into bins; no one assisted him, following which his back was very sore and the pain intensified.

"Q. Now did you have a relapse or some such thing. * * * Did it suddenly get worse * * *? A. Oh yes. Well, it wasn't my back; it went to my leg. * * * A. On the 26th (September). * * * Q. Had you done any work around your house on either Saturday afternoon or Sunday? A. * * * On Saturday (September 24th) I just done normal light labor. I got a little popcorn in my garden. I have a six-inch knife and I bent over and cut the popcorn. * * * A. * * * I got ten rows eight feet long, and I cut it. * * * Q. And then October 10th was the first time you saw Dr. Sherbok? A. Yes, sir. Q. And on what date did Dr. Sherbok operate? A. The (October) 24th."

Joe Linch, a witness for claimant, testified:

"Q. Do you remember an occasion when he (claimant) first complained of his back? A. I think it was the day before we unloaded two by fours. He said his back might be stiff, or something. We are unloading sheeting. * * * Q. So the next morning * * * did he start assisting you in the unloading * * * these two by fours? A. Yes, about a half truck load. Q. Then he complained about his back being still sorer than it had been to begin with? A. Yes."

Beverly Morton, a witness for respondents, testified:
"Q. Did he leave work on May 12? A. Yes. * * * sometime before noon. Q. Did he come back to work then? A. Then he came back to report to me what the doctor had reported — straining the muscles and had recommended that he not work * * *. Q. And did he come back to lighter work then? A. * * * He started the (May) 16th. * * * Q. And then did he work continuously until October 10th? * * * A. * * * towards September I noticed that he was really doing more, the full heavy work. * * * A. On the (October) 10th is when he reported in and said that his back was bothering him and he was going to see the doctor. * * * then he came back after seeing the doctor and stated that he couldn't work * * *."

Dr. Sherbok, a witness for claimant, testified that he is licensed to practice medicine in Colorado, his practice limited to orthopedic surgery; he first saw claimant October 10, 1955. Claimant had some very definite positive physical findings at the first time I saw him.

"A. I made a diagnosis of ruptured disc between the fifth lumbar segment and the first sacral segment on the right * * *. * * * A. I advised hospitalization for a conservative therapy * * *. * * * A. * * * I carried him along conservatively from the 12th to the 24th of October, at which time I did a laminectomy between the fifth lumbar segment and the first sacral segment on the right. Q. And upon the operation * * * was your diagnosis confirmed? A. Yes. I found a very frank herniated disc."

Also the written report of Dr. Gunderson, a witness for claimant, was filed and made a part of the record before the Commission and under C.R.S. 1953, 81-14-3(1), was properly considered by the Commission. His report states his medical opinion of claimant:

"Although there is no clear-cut history of injury in this case, his symptoms began after heavy lifting accord-

ing to his history and he had no previous trouble with his back. Therefore, I would attribute his present disability to this incident."

It is admitted that both employer and claimant employee were subject to the provisions of the Workmen's Compensation Act and the employer had complied with the provisions thereof requiring insurance. The sections of the act as to when compensation shall be obtained are:

C.R.S. 1953, 81-13-2(2): "Where, at the time of the accident, the employee is performing service arising out of and in the course of his employment." and 81-13-2(3): "Where the injury * * * is proximately caused by accident arising out of and in the course of his employment, and is not intentionally self-inflicted."

Whether claimant's injury arose out of and in the course of his employment at the lumber yard on May 12, 1955, or arose out of his employment cutting corn at his home on September 24, 1955, presented a question of fact to be determined by the referee and the Commission. They both found the injury arose out of and in the course of his employment at the employer's lumber yard on May 12, 1955.

The accident was found to occur at a "definite time," was "unexpected" and "unintended," and under the decisions of this Court would be an "accidental injury under the Compensation Act."

In *Central Surety & Ins. Corp et al. v. Industrial Commission et al.*, 84 Colo. 481, 490, 271 Pac. 617: "In Workmen's Compensation Acts injuries are designated "accidents' to distinguish them from intentional injuries and injuries caused by disease. * * * To constitute an accidental injury, it is not necessary that there should be anything extraordinary occurring in or about the work itself, such as slipping, or falling, or being hit. (Citing cases)" *Keating v. Industrial Commission*, 105 Colo. 155, 95 P. (2d) 821.

In *Carroll v. Industrial Commission*, 69 Colo. 473, 475,

254

195 Pac. 1097, 19 A.L.R. 107: "* * * The result was unexpected and unintended, and therefore an 'accident.' The term 'accident' is often used 'to denote any unintended and unexpected loss or hurt apart from its cause. 1 C.J. 395 * * * By the term 'injury' is meant, not only an injury the means or cause of which is an accident, but also any injury which is itself an accident. * * * (Then citing with approval) *Fidelity etc. Co. v. Industrial Accident Commission of California,* 177 Cal. 614, 171 Pac. 429, L.R.A. 1918F 856: "It was there stated that the current of authority is that "unforeseen, unexpected and unintended injuries to employees have been classed as "accidents" and held sufficient to justify awards.' "

In *Allen et al. v. Gettler et al.,* 94 Colo. 528, 530, 30 P. (2d) 1117, is stated: "* * * 'neither a congenital weakness nor a pre-existing disease will render noncompensable an injury received under conditions which would otherwise make it compensable.' " *Merriman v. Industrial Commission,* 120 Colo. 400, 210 P. (2d) 448.

In *U.S. Fidelity and Guaranty Co. v. Industrial Commission et al.,* 96 Colo. 571, 580, 45 P. (2d) 895: "If the causes shown by the evidence, exertion and excitement, were not out of the ordinary, the result was out of the ordinary and was unexpected and under the rules we have laid down constituted an accident." *Industrial Commission et al. v. Ule,* 97 Colo. 253, 256, 48 P. (2d) 803.

*Ellermann v. Industrial Commission,* 73 Colo. 20, 213 Pac. 120: "If death was due to 'over-exertion' 'arising out of' the employment, and would not have occurred save for such employment, then the 'over-exertion' was an 'accident.' "

*Industrial Commission v. Royal Indemnity Co.,* 124 Colo. 210, 236 P. (2d) 293: "If the evidence, and the logical inference therefrom, can be said to warrant a conclusion that the accident, within a reasonable probability, resulted in a disability, the claimant is entitled to compensation, since he was successful before the com-

mission." *Peter Kiewit & Sons Co. et al. v. Industrial Commission et al.,* 124 Colo. 217, 236 P. (2d) 296.

The most recent expression of this Court hereon is *Industrial Commission v. Corwin Hospital,* 126 Colo. 358, 363, 250 P. (2d) 135, where we quoted from *In re Mc-Nicol,* 215 Mass. 497 as follows: " 'An accident "arises out of" the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury.' "

The Commission's findings, when supported by competent evidence, are binding on the courts. *United States Fidelity and Guaranty Co. et al. v. Industrial Commission, et al.,* supra.

The judgment is affirmed.