No. 19,597.

CREED STEWART HUFF, ET AL. *v.* AETNA INSURANCE
COMPANY, ET AL.
(360 P. [2d] 667)

Decided March 20, 1961.   Rehearing denied April 10, 1961.

Mr. L. F. BUTLER, for plaintiffs in error.

Mr. DUANE O. LITTLE, Mr. DUKE W. DUNBAR, Attorney
General, Mr. FRANK E. HICKEY, Deputy, Mr. PETER L.
DYE, Assistant, for defendants in error.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

IN the trial court plaintiffs in error were plaintiffs and
defendants in error were defendants.  We shall refer to

the plaintiffs (three minor children of Creed S. Huff) as "claimants"; to defendant in error Frank C. Klein & Company as "employer"; to Industrial Commission of Colorado as the "Commission" and to Creed S. Huff as the "decedent."

Claimants sought recovery under the Workmen's Compensation Act for the death of their father. The findings and conclusions of a referee were adverse to the claimants, and the Commission approved and confirmed the referee's findings. The case was then taken to the district court where the award of the Commission was affirmed and claimants are here by writ of error.

The facts incident to the claim may be briefly stated as follows: Decedent was employed as a truck driver and had been so employed for a little more than six months. On April 1, 1956, he was directed by his employer to drive an oil transport truck from Denver, Colorado, to Cheyenne, Wyoming, there to have the tank of the transport filled with oil and return the same to a point in Colorado. Decedent arrived at his destination in Cheyenne shortly before midnight of April 1, 1956. The tank was filled after another employee had started the process and left. This employee saw decedent get into the cab of his truck after having placed a jack therein. Upon returning later this employee found decedent slumped over in the cab of his truck and upon examination discovered that he was dead. The Commission in a supplemental finding, ordered by the trial court, found from circumstantial evidence that decedent had changed a tire on his truck while in Cheyenne; that changing tires was part of his usual duties and that it did not involve any "unusual activity or an extraordinary occurrence, and that there is no evidence of overexertion."

The autopsy disclosed that decedent came to his death as a result of a coronary thrombosis, and that he had a prior condition involving sclerotic deterioration of the heart. According to the testimony of Mrs. Huff, the heart

condition of decedent was unknown to both of them, her testimony being that her husband had not been ill since 1936 and that he was a "very well man."

The referee and the Commission found from the evidence that there was no over-exertion indulged in by decedent on this occasion which would constitute an accident arising out of and in the course of his employment and compensation was denied.

In *Industrial Commission v. International Corp.,* 132 Colo. 256, 287 P. (2d) 275 we held that in cases of heart failure, claimant must prove more than the mere exertion attendant upon the usual and ordinary course of the employment. Over-exertion must be established.

In other words, there must be proof of a causal connection between his employment and the heart ailment which produced the death or incapacity. *Carroll v. Industrial Commission* (1921) 69 Colo. 473, 195 Pac. 1097.

In *Industrial Commission v. Havens,* 136 Colo. 111, 314 P. (2d) 698, the fact situation disclosed that decedent, who died of a coronary occlusion, had been in good health when hired a short time before his death and that he had received a blow while unloading his truck. The evidence also disclosed that in his prior job unloading was not a part of his work. That the over-exertion, plus the blow and admitted prior good health of decedent, made a prima facie case that was not rebutted by employer. In other words, in *Havens* there was no evidence to the contrary on which the Industrial Commission could base a finding of noncompensability.

The comment in *Havens* concerning medical testimony is of course dicta and was not meant to apply to this type of fact situation where the employer's evidence does create a valid conflict in the evidence. When there is conflicting evidence between two doctors as here, then the Industrial Commission is the finder of the facts and we should not set aside their rulings. Again we point out that in *Havens* there was no competent evidence to support the findings of the Commission.

A recent case related to *Havens* in some ways is *Marotte v. State Fund* (1960), 145 Colo. 99, 357 P. (2d) 915. There a denial of benefits was reversed because there was no evidence to support the Commission's findings, the only medical testimony there being to the effect that the heart attack which resulted in claimant's disability supported a theory of accidental injury.

█ Here we have an entirely different situation. The employer's evidence was that the exertion of changing a tire was a normal part of decedent's duties and there was competent medical testimony of a prior heart condition. Under these facts and based on the conflicting evidence before it the Commission was justified in making its finding of non-liability and it is binding on the courts. *Metz. v. Industrial Commission* (1956), 134 Colo. 249, 302 P. (2d) 521. Also see *Claimants v. Durango Furniture Mart* (1957), 136 Colo. 529, 319 P. (2d) 494.

The judgment is affirmed.

MR. CHIEF JUSTICE HALL specially concurs in which MR. JUSTICE DAY joins.

MR. JUSTICE DOYLE dissents.

MR. CHIEF JUSTICE HALL specially concurring:

I concur in the majority opinion holding the findings and order of the Industrial Commission denying compensation are correct and should be affirmed.

However, I do not subscribe to that portion of the majority opinion which seeks to distinguish this case from that of *Industrial Commission v. Havens,* 136 Colo. 111, 314 P. (2d) 698, whereby this court, at least inferentially, reaffirms *Commission v. Havens.*

My views with reference to the decision in *Havens* are expressed in my dissenting opinion therein.

MR. JUSTICE DAY joins in this specially concurring opinion.

MR. JUSTICE DOYLE dissenting: ·

In my opinion, the award was ill founded and this would require reversal of the judgment of the district court with instructions to the Commission to enter an award in favor of the claimant on behalf of the minor children.

The facts set forth in a manner most favorable to claimant show that the decedent arrived at Cheyenne shortly before midnight and there proceeded to have the tank of his transport filled. He was found dead in the cabin of the truck and the surrounding circumstances fully supported the finding of the Commission that he had engaged in changing a tire. Considerable evidence was offered at the hearing showing the difficulties incident to this latter activity. It required the obtaining of a spare tire weighing approximately 125 pounds from a carrying basket located under the truck. The method employed to obtain the tire was fully described. From this evidence it is clear that considerable exertion was involved in this process.

I can see that there is logic in arguing that a transport truck driver should be able to change a tire, even though it be a heavy one, without undue exertion, and if there was no evidence other than the happening itself to explain how this probably came about the decision of the majority would be fully acceptable. However, the autopsy report showed that the decedent, unknown to himself, had had a pre-existing condition, a long standing arterio-sclerosis. From this, the physician on behalf of the insurer concluded that the incident could have occurred without exertion. This may be true, but the evidence does not show that it occurred without exertion. The claimant was indisputably engaged in prior exertion on behalf of his employer and these are the facts which give character to the occurrence.

There must, of course, be proof of the existence of a causal connection between employment and a heart at-

tack operating to produce death or incapacity. See *Carroll v. Industrial Commission,* 69 Colo. 473, 195 Pac. 1097, holding that a workman pitching hay in a dust laden atmosphere, who suffered a heart attack, was entitled to be compensated. See also our very recent decision in *Marotte v. State Compensation Fund,* 145 Colo. 99, 357 P. (2d) 915, holding that a police officer who suffered an attack a few days after an automobile accident and after a snake chasing incident was entitled to compensation. See especially *Industrial Commission v. Havens,* 136 Colo. 111, 314 P. (2d) 698, which the majority seeks to distinguish. I did not participate in the *Havens* case, but I consider it to be correct. The facts of that case were quite similar to the present case in that they involved the unloading of a truck by a truck driver. The majority opinion speaks up loudly and clearly and in a manner that indicated that there was no doubt but that compensation was payable under such circumstances, and at page 119 said:

"In cases such as the one before us, claimants are not required to *prove* by direct and conclusive evidence the cause of death as arising out of the employment; they make a prima facie case by showing the *circumstances* establishing a reasonable connection between the overexertion or trauma occurring in the course of the employment and preceding death, and the subsequent death by heart failure. Thus the causal connection was prima facie established in the case at bar and thus arises the presumption that the death resulted from or was precipitated by the 'accident' of the overexertion or the blow from the handcar, or from both. The failure or inability of the employer to rebut the claimants' prima facie case is thus fatal to its position in this court."

The only distinction which can be made between the cases is the existence of medical testimony in the present case holding that the injury was not compensible. Noteworthy, however, is the fact that when the *Havens* case

was written this was not considered significant. In this it was said:

"Even in cases of medical dispute as to the cause of an injury if there is proper evidence favoring the claimant, such is sufficient to grant the protection of the Act even though the weight of medical testimony may be to the contrary, and the undisputed evidence of an uncontroverted probability as in this case must sustain recovery."

Dr. Bradford, who testified for the insurer here, conceded that the heart attack could have been triggered by the changing of the tire. True, he testified that the balance of the probabilities favored the conclusion that the exertion was not significant. However, I do not believe that his expression of opinion is binding on us as a basis for a finding of fact. It seems to me that the question is still one of law and that if it appears that the evidence showing that an injury produced the result is substantial and cogent that a referee and commission is not at liberty to simply throw it out merely because they do not happen to like it. See the language of *Havens* dealing with the remedial nature of proceedings under the compensation act. The majority opinion is not only retreating from the *Havens* case, it strikes me as an effective repudiation of it because it furnishes a formula for circumventing it. From now on out, all the insurer need to do is to produce some medical opinion — any kind — and it should not be too difficult to find some, stating that the exertion did not produce the result and if the Commission accepts this that is the end of the claimant's case regardless of the contrary circumstances or the strength of the opinion evidence on behalf of the claimant.

I wish to direct a few comments to the Commission and to insurers. Do not feel too secure as a result of today's majority opinion because it is not designed to endure indefinitely. In fact, it may be modified the very next time that a somewhat different, but similar in

principle, fact situation appears. So, even though *Havens* appears to be dead today, you can expect it to spring to life at any time.

I do not wish to be understood as saying that *Havens* is dead as a result of today's majority pronouncement. Instead it is merely in a condition of dormancy. It will come to life again in an indistinguishable fact situation involving different equities.