No. 19,876.

INDUSTRIAL COMMISSION OF COLORADO, ET AL., v. FRANCES M. HESLER.
(370 P. [2d] 428)

Decided April 2, 1962. Rehearing denied April 23, 1962.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. PETER L. DYE, Assistant, for plaintiff in error Industrial Commission of Colorado.

Mr. HAROLD CLARK THOMPSON, Mr. LOUIS SCHIFF, Mr. ALIOUS ROCKETT, Mr. FRED B. DUDLEY, for plaintiffs in error State Compensation Insurance Fund and Arapahoe County.

Mr. EDWARD E. JERSIN, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE McWILLIAMS.

JOSEPH HARRY HESLER, age 64, died at about 9 o'clock A. M. on January 22, 1960. According to his death certificate the immediate cause of death was "coronary thrombosis," which in turn was "due to chronic myocarditis."

His widow, Frances M. Hesler, filed a claim for workmen's compensation benefits with the Industrial Commission of Colorado. The employer, Arapahoe County, and its insurer, The State Compensation Insurance Fund,

resisted the claim. After hearing the referee denied the claim for benefits, which order was thereafter affirmed and adopted by the Commission. After her petition for review was denied, the claimant instituted proceedings in the district court seeking to have the order of the Commission set aside on the grounds that the Commission in denying her claim had acted "in excess of their powers" and contrary to the facts and the law. The trial court upon hearing found for the claimant and entered a judgment directing the Commission to vacate its order and grant the claim. By writ of error the Commission, the Fund, and the employer seek reversal of the judgment.

Resolution of the controversy turns on a determination of whether Hesler's death was "proximately caused by accident arising out of and in the course of his employment," as that phrase has been defined, and redefined, by this Court in numerous workmen's compensation cases involving death caused by heart attack.

It is claimant's position that at the hearing before the referee she established a *prima facie* case entitling her to death benefits, that her evidence establishing this *prima facie* case was undisputed and not in any manner rebutted, and as a matter of law under such circumstances the Commission should have granted her claim.

The Commission, the Fund, and the employer contend that, viewed in a light most favorable to the claimant, the case is simply one where the Commission was confronted with a conflict in the evidence, or, if the facts themselves were not in dispute, then there was conflict in the inferences deducible therefrom, and under such circumstances the finding and award of the Commission should not be disturbed by the judiciary. Thus the facts and circumstances surrounding and leading to the death of Hesler must be carefully analyzed.

For more than ten years immediately prior to his death Hesler was employed by Arapahoe County to grade its roads and to perform this task he used a piece

of heavy equipment known as a road grader. At the end of every day's work Hesler would take the road grader to his home where it was kept over night in his yard. One of the obvious incidents of his duties was to start the road grader each and every morning — winter as well as summer, which he did without any adverse effect until the fateful morning of January 22, 1960.

On that particular morning at about 8 o'clock, with the thermometer reading two or three degrees below zero (Fahrenheit), Hesler in good spirits and apparent good health left the warmth of his hearth and went into his yard, intending to start the road grader and proceed to his assigned duties. The record discloses no eyewitness testimony as to exactly what transpired thereafter, though his wife testified that while washing the breakfast dishes she caught frequent glimpses of her husband as he tried to start the road grader, and that she was also able to "hear" what occurred. In a like manner, a neighbor "saw" nothing, but "heard" all.

Without going into great detail as to the manner in which this piece of heavy equipment was started, it is sufficient for our purposes to note that the initial step was to start a small "pony" gasoline motor. Once the pony motor was successfully started, it was then placed "in gear" to the larger motor, which in turn propelled the grader itself. A lever or clutch was physically pushed or moved forward in order to get the pony motor "in gear" with the larger motor.

The record does not disclose whether there was any particular problem in starting the road grader in warm weather, but it does disclose that cold weather made starting a somewhat more difficult task, for basically the same reason that an automobile is more difficult to start in winter than in summer. Because the oil was "stiff and hard" it required more physical strength to move the clutch, and Hesler on this particular occasion apparently had to disengage the clutch several times

because the pony motor did not have sufficient power to start the larger motor.

After some 15-20 minutes, during which time Hesler was either on the machine manipulating the clutch or standing on the ground "trying to keep warm," he succeeded in starting the grader, but after he backed the machine a few feet he suddenly stopped because he had begun to have sharp pains in his arms which radiated toward his chest area. He returned to the house and his wife immediately called a nearby doctor, who responded promptly and administered a shot of adrenalin. All to no avail, however, as Hesler died only minutes later.

In its report the employer stated that the "employee [was] alleged to have suffered heart injury while attempting to shift gears on Caterpillar grader while gear box oil was cold and stiff, as a result of below zero weather."

In her claim for compensation Mrs. Hesler, in response to a query as to the nature of the injury caused by the accident, declared: "heart injury from strain and overexertion from trying to shift gears on Caterpillar Tractor while grease and oil was stiff and hard from zero weather." She also stated that the cause of death was "coronary thrombosis induced by overexertion and strain in starting the grader in zero weather."

In a letter to the Commission the attending doctor stated that he "attended Joseph Harry Hesler on an emergency basis only during his last few minutes of life. Not being his family doctor it would be rather difficult for me to consider his physical condition prior to the coronary thrombosis or any factor which may have precipitated it."

The death certificate was prepared by a Dr. S., who was Hesler's family physician, and who, as was noted above, stated in the certificate that the immediate cause of death was "coronary thrombosis," which was "due to chronic myocarditis."

Some two months after Hesler's death Dr. S. advised the Commission by letter that Hesler "died on January 22, 1960, from a coronary thrombosis while trying to get a Caterpillar tractor running on a cold morning. I feel that since he was in good health before this occurred that his death was due, to a large extent to his overexertion at that time." Upon hearing this report was received in evidence without objection, although the Fund indicated a desire to cross-examine Dr. S.

Upon cross-examination Dr. S. admitted that he had treated the deceased some two years for myocarditis, but that in his opinion such was only "mild" and definitely not "serious." He confessed that it was "impossible" to be "sure just what caused this man's (Hesler's) death," although he reiterated the belief expressed in his earlier letter to the Commission that Hesler's "death was due, to a large extent, to his over-exertion at the time." In explaining why he made no mention of this alleged overexertion in the death certificate, Dr. S. stated that when he signed the certificate he did not know the precise sequence of events preceding the heart attack, and that he had since been advised of such by the claimant. At the conclusion of the hearing the letter from Dr. S. was stricken on the grounds that it was based on hearsay.

In denying this claim the referee stated as grounds therefor: that "On the morning of this unfortunate incident he exerted no greater physical effort than he had exerted on numerous occasions before. In fact, the only eyewitness testified that she could assume extraordinary effort only from the noise of the motor. She, in fact, testified that he spent a good deal of the time standing about the engine waiting for it to warm up sufficiently to operate.

"The testimony offered in support of claimant's claim at no time disclosed any violent, extraordinary or extremely difficult strain or overexertion such as would

constitute an accident within the meaning of the Workmen's Compensation Act."

* * *

"The Referee finds from the evidence adduced herein that the claimant is not entitled to payment of compensation for death benefits inasmuch as the facts concerning the decedent's work function immediately prior to his death do not come within the category which would entitle it to be evaluated as an accident arising out of and in the course of his employment."

It is claimant's basic position that on the record before it the Commission as a matter of law was compelled to grant her claim for benefits. In this regard claimant is in error, as the best that can be said of her case is that it presents a conflict in the inferences which may logically be drawn from the evidence, and in such situation the finding and award of the Commission should not be upset by the judiciary. See, for example, *Claimants in the Matter of the Death of Leo W. Bennett v. Durango Furniture Mart, et al.,* 136 Colo. 529, 319 P. (2d) 494.

C.R.S. '53, 81-13-2 (3) provides that one of the conditions precedent to recovery is that the death be proximately caused by an accident arising out of and in the course of the deceased's employment. This statute has been construed so as to include not only the obvious "slip and fall" type of accident, but also situations where the injury, and not the cause, is itself an "accident." See *Wesco Electric Company v. Shook,* 143 Colo. 382, 353 P. (2d) 743.

In fatal "heart" cases the claimant must show that an accident or overexertion proximately caused the death of the employee. In the instant case the record fails to disclose an accident in the "slip and fall" sense of that word, and for that reason alone is distinguishable from *Industrial Commission of Colorado v. Havens,* 136 Colo. 111, 314 P. (2d) 698, where deceased suffered

a blow from a handcar, and *Marotte v. State Compensation Insurance Fund,* 145 Colo. 99, 357 P. (2d) 915, where the employee suffered a non-fatal heart attack shortly after an automobile accident. Being unable to show any such "accident," it devolved upon this claimant to establish *over*exertion.

Immediately prior to his death the deceased was engaged in starting the road grader, as he had done almost every morning, winter as well as summer, for the preceding ten years. The record simply does not disclose any violent, extraordinary or extremely difficult strain or overexertion such as would constitute an accident within the meaning of the Workmen's Compensation Act. In *Industrial Commission of Colorado v. International Minerals & Chemical Corp.* 132 Colo. 256, 287 P. (2d) 275, it was said: "It may be accepted as true that some exertion probably hastened his death; however, there is some exertion in all forms of manual labor and the requirements of the law in such cases are that there must be more than mere exertion, in other words the claimant must establish overexertion . . . It has been the consistent holding of this court that in such cases, *claimant must prove more than the mere exertion upon the usual and ordinary course of the employment,* and that overexertion must be established." (Emphasis supplied.)

The combined testimony of the claimant, the neighbor who "heard" but did not "see," and the supervisor who was not at the scene, falls far short of establishing "overexertion" as a matter of law. Nor is the Commission compelled to find "overexertion" simply because Dr. S. in a letter, written two months after Hesler's death, stated that "I feel that since he was in good health before this occurrence that his death was due, to a large extent to his overexertion at that time." Assuming, without deciding, that this letter was improperly stricken from the record by the referee, still when viewed in context it is totally insufficient to compel the Commission

to find overexertion as a matter of law. On cross-examination Dr. S. admitted that instead of being in "good health" the deceased suffered from myocarditis, which at the time of the hearing he described as "mild," though in the death certificate he characterized it as "chronic." He further conceded that it was "impossible" to be "sure" as to what "caused" this death.

■ Paraphrasing the language used in *Industrial Commission v. International Minerals & Chemical Corp.,* supra, Hesler's exertion in starting the road grader may have hastened his death, but the claimant must prove more than the mere exertion attendant upon the usual and ordinary course of his employment. The factual situation presented by the instant case is analogous to that in *Huff v. Aetna Insurance Co.* 146 Colo. 63, 360 P. (2d) 667, where an award of the Commission denying a claim for death benefits was upheld in a situation where a truck driver presumably died from coronary thrombosis while changing a heavy truck tire. It was specifically noted in that case that changing a tire, even a heavy one, was a "normal part of decedent's duties." In the instant case, starting the road grader, even on cold mornings, was a "normal part of decedent's duties." Under all these circumstances the Commission did not err in denying this claim.

Claimant suggests that instead of affirming the award of the Commission, the matter more properly should be remanded to the Commission with directions to conduct further hearings which would in effect amount to a hearing de novo of this matter. In support of this request she alleges that because of procedural defects attendant upon the hearing before the referee she was deprived of certain of her constitutional rights. No useful purpose would be served by a recital of these alleged errors in the conduct of the hearing. Suffice it to say that we have carefully reviewed the record in this regard and find claimant's contention to be without merit.

The judgment is reversed and the cause remanded to the trial court with directions to vacate its order and to affirm the award of the Commission.

MR. JUSTICE SUTTON and MR. JUSTICE FRANTZ concur.