## No. 21291.

BACA COUNTY SCHOOL DISTRICT NO. RE-6, ET AL., *v.*
GEORGIA MAE BROWN, ET AL.
(400 P.2d 663)

Decided April 5, 1965.

Harold Clark Thompson, Alious Rockett, Francis L. Bury, Feay Burton Smith, Jr., for plaintiffs in error.

Raymond J. Cody, John W. Lentz, for defendants in error.

*In Department.*

Opinion by Mr. Justice McWilliams.

This is a "heart" case arising under the Workmen's Compensation Act.

By appropriate order the Industrial Commission determined that Virgil Lloyd Brown suffered a fatal heart attack arising out of and in the course of his employment. Accordingly, it awarded his surviving widow and four minor children those compensation benefits provided by the applicable statute. Brown's employer, and more especially the employer's insurance carrier, being dissatisfied with the aforementioned award of the Commission, sought judicial review thereof. Upon hearing the trial court approved and affirmed the award of the Commission, and by the present writ of error the employer and its carrier seek reversal of this judgment.

The sole issue to be resolved by this Court is whether there is evidence to support the several findings and award of the Commission. Claimants contend that the record contains such supporting evidence, whereas the employer and its insurance carrier contend that it does not and that this is an instance where the award of the Commission is based on assumption, speculation and sheer conjecture. Our review of the record convinces us that there is sufficient competent evidence to support the award and that the judgment of the trial court must therefore be affirmed.

A brief resume of the evidence which was before the Commission is deemed necessary to give substance and meaning to our conclusion in this regard. As of the date

of his untimely death, Brown was the superintendent of schools in Campo, Colorado. On the fateful day in question Brown arrived at school around eight o'clock in the morning and found that the roof of the school building was leaking to such an extent that buckets had to be placed on the hallway floor to catch the dripping water. There was disagreement among the several witnesses as to the amount of snow on the ground or on the roof at this particular time. In this regard it was established that it had snowed two days before and that there had been a blizzard five days before the incident here in question. Estimates as to the amount of snow still on the ground ranged from two to ten inches, with one witness stating that snow was "banked up" some eighteen inches. In any event, because of the fact that the roof was leaking Brown proceeded to climb a ladder to the roof of the school building—the roof being some twelve to fifteen feet above the ground level—for the obvious purpose of inspecting the same and ascertaining what could be done to alleviate the situation.

One witness, a school teacher, testified that when she arrived at the school at about 8:20 a.m. she saw Brown on the roof of the school building, sans overcoat, shoveling snow from and off the roof of the school building. This same witness went on to testify that she next saw Brown some thirty to forty minutes later in the school library, Brown by this time having concluded his shoveling activity and come down from the roof. The witness said that she remonstrated with Brown for having been up on the roof shoveling snow, without a topcoat, and noted at the time that Brown didn't seem to be himself. In this regard the witness said that Brown was ordinarily quite an "easy going man," but on this occasion his eyes "bugged out," his face was red and after a brief conversation he "rushed out."

Continuing, then, another witness, who was painting some doors of the school building on the morning in question, testified that Brown, after leaving the library,

came up to him and proceeded to apprise him of the leaky roof. The witness went on to say that as a result of their conversation the two of them were going back onto the roof when Brown collapsed and died. The same witness testified that about two hours after Brown's death he got up on the roof and specifically noted that at the time there was no snow on it.

The cause of Brown's death was noted on the certificate of death as "myocardial infarction."' In connection therewith and in response to a hypothetical question, a doctor, called by the claimants and qualified as a specialist in cardiology, testified that in his opinion "there probably is a causal relationship between the exertion that occurred on the roof and the man's ultimate demise." He explained that shoveling snow for any length of time was an extremely "energy consuming" activity and that the longer Brown shoveled, the greater the probability that there would be a cause-effect relationship between this activity and his subsequent heart stoppage.

On cross-examination counsel for the insurance carrier got the doctor to concede that his opinion in this regard was "speculation." However, on redirect examination counsel for the claimants got the witness "back on the track" when the doctor explained his prior answer by agreeing that his so-called "speculation" was nonetheless "based upon reasonable probability"!

The foregoing is deemed to be a fair recital of the evidence adduced by the claimants in support of their claim. Based upon such evidence the Commission found that Brown "suffered a fatal heart attack as the result of unusual exertion and stress * * * and that the same arose out of and in the course of his employment."

██ There is no real dispute as to the law which governs this controversy. In fatal "heart" cases the claimant must show that an accident or overexertion arising out of and in the course of his employment proximately caused the death of the employee. See *Industrial*

*Commission of Colorado, et al., v. Hesler,* 149 Colo. 592, 370 P.2d 428. Furthermore, in such cases the claimant must prove *over*exertion, i.e., something more than mere exertion attendant upon the discharge of the normal and usual duties of the decedent. See *Industrial Commission of Colorado, et al., v. International Minerals and Chemical Corp., et al.,* 132 Colo. 256, 287 P.2d 275; and *Huff v. Aetna Insurance Company,* 146 Colo. 63, 360 P.2d 667.

■ The employer and its carrier claim there is no proof that any overexertion caused Brown's death. It is urged that there are too many "gaps" in the claimants' case and to illustrate their thinking in this regard they point out that there is no evidence to establish whether Brown was using a big shovel or a little shovel; a short-handled shovel or a long-handled one; or how fast Brown shoveled or how long he shoveled or indeed "how heavy the snow was." We are of the view that the employer and its carrier are arguing for detail and a degree of proof not required by the Workmen's Compensation Act. The degree of proof required of any claimant in a workmen's compensation proceeding is neither one of mathematical certainty, nor one of proof beyond a reasonable doubt. Rather, in order to prevail the claimant must prove his right to compensation benefits by a preponderance of the evidence. See *Aetna Casualty and Surety Company, et al., v. Industrial Commission, et al.,* 127 Colo. 225, 255 P.2d 961.

■ There is no dispute but that the shoveling of snow off the roof of the school building was *not* one of the normal and usual duties assigned to Brown, he being the superintendent of the school system in Campo, and not its janitor. Shoveling any snow off the roof, then, was not "mere exertion" attendant to Brown's usual duties but was "overexertion" in the sense that by shoveling snow off the roof Brown was doing something more than merely performing his usual and customary duties. In our view there is testimony which, when considered

with the inferences reasonably deducible therefrom, supports the finding that Brown was shoveling snow from the roof of this school building for an appreciable length of time without a topcoat and in cold weather. In other words the claimant did make out a *prima facie* case of overexertion.

■ Also, the testimony of claimant's doctor was sufficient to support the finding that there was a causal-effect relationship between the overexertion and the subsequent heart failure. It is quite true that a doctor called by the employer and its carrier testified that there was *no* relationship or connection between the alleged overexertion and the heart failure; that Brown was simply destined to die at the time and place where he did, and that this unfortunate event would have occurred *even if* Brown had never gone onto the roof and shoveled any snow therefrom. This, however, did no more than pose a controverted issue of fact which has now been resolved by the Commission in its fact-finding role.

In short, we hold that there is sufficient evidence to support the finding and award of the Commission, and hence the judgment is affirmed.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE DAY concur.