No. 23209.

BEULAH P. BLOOD, A/K/A MRS. LEON T. BLOOD, JR. *v.* INDUSTRIAL COMMISSION OF COLORADO, HARMON CONSTRUCTION COMPANY, AND STANDARD ACCIDENT INSURANCE COMPANY.
(440 P.2d 775)

Decided May 13, 1968.

PHILIP A. ROUSE, ROBERT L. HOECKER, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY,

534

Deputy, Peter L. Dye, Assistant, for defendant in error Industrial Commission of Colorado.

Sheldon, Nordmark and Bayer, George M. Allen, for defendants in error Harmon Construction Company and Standard Accident Insurance Company.

*In Department.*

Opinion by Mr. Justice Kelley.

This is a workmen's compensation case. Beulah P. Blood, the widow of Leon T. Blood (decedent), filed a claim for compensation benefits against Harmon Construction Company (employer), alleging that decedent's death arose out of and in the course of his employment by virtue of an accidental injury. Standard Accident Insurance Company is the insurer of the employer's liability under the Workmen's Compensation Act.

The commission awarded no compensation. The district court affirmed the award and the case is before us on writ of error.

A brief factual statement is requisite to a clear understanding of the assigned errors and the discussion attendant thereto. Additional facts will be added where necessary to a full discussion of the alleged errors.

The decedent was a forty-eight-year-old iron worker who, immediately prior to his death on March 27, 1964, at 2:00 A.M., was employed as such in the construction of the Security Life Building in Denver. For several days prior to death, the decedent worked in an area adjacent to which a fellow worker was smoothing the concrete floors with a machine. The operation of the machine created clouds of dust which caused the decedent to have coughing spells. On the day immediately preceding his death the decedent was subjected to an increased amount of dust, which caused breathing diffi-

culties and more acute coughing spells. The coughing continued intermittently for several hours after he left work, at approximately 4:30 P.M., March 26, 1964, with spells estimated as lasting as long as ten to fifteen minutes. The cause of death was heart failure.

Like all other claims arising under the Workmen's Compensation Act, it is incumbent upon the claimant in a "heart" case to establish that an accident arising out of and in the course of decedent's employment proximately caused the death of the employee. *Baca County School District v. Brown,* 156 Colo. 562, 400 P.2d 663. It should be noted, however, that in heart cases, "overexertion" may constitute the accident. In such cases the claimant must prove that decedent's exertion was more than the exertion attendant upon the discharge of the normal and usual duties of the decedent. *Evans v. City and County of Denver,* 165 Colo. 311, 438 P.2d 698; *Baca County School District v. Brown, supra; Huff v. Aetna Ins. Co.,* 146 Colo. 63, 360 P.2d 667.

This brings us to an appropriate juncture to discuss three of claimant's assignments of error relating to the sufficiency of the evidence. These assignments may be consolidated in the following manner to facilitate the analysis and discussion of their merits:

The findings of fact, as found by the Commission, require an award of compensation as a matter of law; that the evidence does not support the award denying compensation, and that the Commission required claimant to prove *both* an accident *and* overexertion.

The first two propositions are obverse sides of the same coin: the facts require an award of compensation as a matter of law vis-a-vis the facts do not support an award denying compensation.

In addressing ourselves to the problem created by this phase of claimant's argument, it must be remembered that we cannot disturb the findings of fact by the Industrial Commission based upon conflicting evidence where such evidence is sufficient to support the findings.

*Bowlus v. Industrial Commission,* 152 Colo. 535, 383 P.2d 789; *Skinner v. Industrial Commission,* 152 Colo. 97, 381 P.2d 253; *Vanadium Corp. v. Sargent,* 134 Colo. 555, 307 P.2d 454. This is true even though we may have reached a contrary conclusion were we the triers of the fact. *Industrial Commission v. Klaczkowski,* 146 Colo. 11, 360 P.2d 104.

The order we are scrutinizing contained three parts: (1) a review of the evidence, constituting three pages; (2) findings of fact, which, because of its brevity, we quote in full:

"It is your Referee's feeling and finding that no real causal relationship of certainty was shown between inhalation of dust and claimant's fatal cardiac arrhythmia," and (3) the order denying the claim for dependency benefits.

Four medical doctors testified, two for the claimant and two for the employer and the insurance carrier. In testing the ultimate finding of the Commission we are concerned only with the sufficiency of the testimony which purports to support that finding.

The Commission's finding on which the order was based is primarily supported by the testimony of Doctors Hurst and Mahoney. However, the medical testimony of the other witnesses in many respects supported the referee's conclusion. The points of divergence were matters of degree and even on those points reconciliation is possible in many instances.

Dr. Duman, called by claimant, testified:

"In my opinion, the man died as a result of a combination of factors. Namely, insufficiency of his breathing capacity caused by emphysema with resulting strain on the heart as a result of that, with the additional factor of embarrassment of the heart due to insufficient blood supply from the coronary artery disease, which was described by Doctor Toll [a pathologist who performed autopsy five months following death] resulting in very

likely a terminal disturbance of heart rhythm, which is a very common terminal event in this type of condition and death."

Dr. Hurst, as to the cause of death, gave this as his opinion:

"* * * [T]his man had a coronary disease; that he presumably died of some episode related to the coronary disease, most likely an arrhythmia, which has been expressed previously; that it is very difficult for me to relate the interlineation of irritant dust to the immediate cause to the coronary closure, I think, or insufficiency which provoked an arrhythmia, the immediate cause of death."

Dr. Hurst, under cross-examination as to the cause of death, stated:

"* * * I don't believe, with extensive experience with chest disease, that people who have associated coronary disease, necessarily contribute to a coronary attack by inhalation of noxious or irritant fumes and dust. I do not believe that mechanism has been demonstrated. I feel that there are much more likely causes other than lung disease to be the cause of coronary attacks."

At another point in his cross-examination Dr. Hurst said that "it is difficult to believe there was a causal relationship between the work, the breathing of dust, and the coronary attack."

Dr. Mahoney, on interrogation by claimant's counsel, disagreed with one of claimant's physicians who opined a causal connection between the coughing caused by the dust and cardiac arrhythmia and stated:

"* * * I accept Doctor Toll's report without question. I agree with his assumption, and assumption on my part that this gentleman had a terminal arrhythmia. I don't agree with Doctor Duman that this was immediately caused by the dust, by the coughing, by his conditions of work. This type of arrhythmia may occur in people who have the most sedentary occupations. I have seen

a man of thirty-two years old, a man with no [lung] problem, drop dead behind his desk at a bank, with this same sort of thing."

And again:

"I don't think that the work conditions and the dust, and the coughing, have a significant part to play in this."

■ This witness also made a comprehensive analysis of the findings of the autopsy report and explained in detail the physiological basis for his conclusions. This, together with a great deal of other consistent testimony, was sufficient support for the Commission's conclusion that there was no causal relationship between the inhalation of dust and the heart stoppage suffered by decedent.

Claimant charges that the Commission erred in requiring her to prove *"both* an accident *and* overexertion to establish a compensable death from heart attack." Claimant's argument is based upon the false assumption that there was a finding that there was an accident, and then finding that there was no proof of overexertion. The only language which approximates such a finding is found in this paragraph:

"Taking this testimony in the best possible light, decedent was alleged by reason of his working conditions to have sustained an accident and with this conceded it, nonetheless, brought about his death from an otherwise natural disease. Superimposed upon this natural disease or cardiac difficulty, no overexertion was necessary to link it to quality of an accident within the meaning of the Workmen's Compensation Act and previous Supreme Court decisions * * *."

The most that can be said for claimant's position is that the statement is unclear. However, it is clear to us that the Commission did not require proof of "overexertion" as an element separate and apart from "accident," because it pointed out that there was no proof of "overexertion to link it to quality of an accident."

Further, in this same paragraph, the Commission concludes:

"* * * Conceding there was strain, nonetheless, it was strain placed upon his body which did not vary from strains to which he must have in past times been subjected. Likewise, noxious fumes must also have been present at other times and places but overexertion, as is required to make a heart attack an accident, was not present."

█ It is obvious the Commission applied the proper rules of law in relation to the requirements of proof.

█ As her last allegation of error the claimant challenges an adverse ruling on the admissibility of certain evidence. The testimony related to a conversation between the witness and the decedent. An objection to the conversation on the ground that it was hearsay was sustained by the referee. There was no offer of proof. For this reason alone we should not consider the claim of error. However, from the transcript of the hearing it is quite clear that the facts sought to be established by this witness were incorporated into hypothetical questions propounded to the experts. In any event, whatever error there may have been was not substantial nor was it prejudicial to the claimant.

In view of the foregoing, we conclude that there is no merit in any of claimant's assignments of error.

The judgment is affirmed.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE PRINGLE and MR. JUSTICE HODGES concur.