PRESTIGE HOMES, INC., Employer; Aetna Insurance Company, Insurors; and the Industrial Commission of Colorado, Petitioners,

v.

Guy Y. LEGOUFFE, Respondent.

No. 81SC263.

Supreme Court of Colorado, En Banc.

Feb. 7, 1983.

Tilly & Graves, John W. Grund, Denver, for petitioners, Prestige Homes, Inc. and Aetna Ins. Co.

Morrato, Bieging, Burrus & Colantuno, P.C., James J. Morrato, Englewood, for respondent.

LOHR, Justice.

This case arises from a workmen's compensation claim filed by the respondent, Guy Y. Legouffe, for a permanent disability suffered as a result of a heart attack allegedly precipitated by an industrial accident. The Industrial Commission (commission) denied benefits, affirming a referee's finding that Legouffe had not established a causal connection between the accident and the injury. The Colorado Court of Appeals reversed and remanded the case to the commission for further proceedings to determine the amount of benefits due the respondent. *Legouffe v. Prestige Homes, Inc.*, 634 P.2d 1010 (Colo.App.1981). We granted certiorari to review the court of appeals' judgment and now reverse that judgment and direct that the case be remanded to the commission for further proceedings.

The industrial accident giving rise to the present controversy occurred on September 8, 1976, while Legouffe was carrying out his regular duties as a construction superintendent for the petitioner, Prestige Homes, Inc. At that time, Legouffe was thirty-three years old and had been working for the company for approximately five years. His duties included field supervision of construction of single family residences as well as some manual labor as a carpenter.

On the day of the accident, Legouffe proceeded to connect an air compressor unit on the back of his pickup truck to a temporary electric supply at the job site. After plugging one end of a cable into the electric supply, Legouffe connected the other end to the air compressor and suddenly received a shock of 220 volts. The claimant testified that he felt the shock enter one hand and travel through his arm and chest and out the other arm. He fell to the ground and experienced chest pain and difficulty in breathing. A co-worker took him to the hospital where the attending physician, Dr. Lissauer, diagnosed the problem as myocardial infarction (heart attack). Tests performed on November 10, 1976, revealed that Legouffe suffers from coronary artery disease and a ventricular aneurysm, which significantly impair his circulation and the proper functioning of his heart.

The employer filed an accident report and the insurance carrier filed a general admission of liability with the workmen's com-

pensation section of the State Department of Labor and Employment. Thereafter, Dr. Lissauer filed a supplemental medical report stating his opinion that Legouffe is permanently disabled due to heart disease, and Legouffe filed a claim for workmen's compensation benefits for a permanent disability. The insurance carrier requested that the claimant undergo an additional medical examination by Dr. Mutz, who subsequently filed reports in which he concluded that neither the claimant's heart attack nor his heart disease was causally related to the electric shock. The insurance carrier then filed a denial of liability and requested reimbursement for payments already made to Legouffe pursuant to the earlier general admission of liability. Evidentiary hearings on the issues of causation and extent of disability were held before a Department of Labor and Employment referee.[1]

The expert testimony at the hearings on the issue of causation was in conflict. Dr. Lissauer testified for the claimant. The doctor stated his opinion that the electric shock was the precipitating cause of the heart attack, but that an after-the-fact attempt to ascertain the specific manner in which the shock caused the heart attack would be conjectural. The doctor testified that the cause of the claimant's left ventricular aneurysm was definitely the heart attack, but that he could not express an opinion as to whether the coronary artery disease was preexisting because the testing method used for diagnosing the disease does not give any indication of the cause. Dr. Lissauer did agree, however, that such disease is usually a long-standing condition.

Dr. Mutz testified for the employer and gave his opinion that the claimant had serious preexisting coronary artery disease, that he was predisposed to having myocardial infarction, and that there was no causal connection between the electric shock and the heart attack.[2] The doctor based his opinion on the facts that coronary artery disease is a long-term degenerative condition which is often asymptomatic until the time of infarction, and that a shock of 220 volts is not severe enough to cause a heart attack of the type experienced by the respondent.[3] One indication of the lack of severity of the shock, he testified, is that the claimant did not suffer any external burns on his body.

The referee issued an order denying the claim for compensation, finding that a causal connection between the electric shock

---

1. After the hearings, in the claimant's petition for review of the referee's initial order, Legouffe advanced the argument for the first time that the general admission filed by the insurance carrier admitted that Legouffe's injuries were caused by the electric shock. The admission reads:

    We hereby admit liability to said claimant for compensation for disability caused by accidental injury ... [and] for such permanent disability as may hereafter be determined to exist.

    This admission was withdrawn after the insurer received reports of Dr. Mutz' examination of the claimant. Furthermore, the claimant did not object when the employer stated at the beginning of the first hearing that causation was one of the issues, and causation was the central question to which both parties directed their evidence at the hearings.

2. The doctor also stated his opinion in his medical reports and testimony that Legouffe may not have received a shock. He speculated that the trauma of the heart attack itself could have given the claimant the impression that he had suffered a shock, especially because he was holding electric wires at the time of the heart attack. However, the question of whether or not Legouffe received a shock is not at issue because the employer stipulated at the commencement of the hearings that the occurrence of an industrial accident is not disputed. Counsel for the claimant did not object to the portions of Dr. Mutz' medical reports and testimony admitted into evidence that refer to his opinion concerning the nonoccurrence of a shock. While this evidence is irrelevant, the referee's and commission's orders indicate that this evidence was disregarded, and appropriate findings were made that Legouffe did suffer an electric shock within the course and scope of his employment. On remand, the referee should disregard evidence that Legouffe may not have experienced an electric shock.

3. Dr. Mutz testified that a less severe electric shock could result in ventricular fibrillation, which will cause unconsciousness and can damage the heart if not promptly corrected, but the claimant's continued consciousness after the shock reflected that he had not experienced ventricular fibrillation.

and Legouffe's heart attack had not been shown. Upon the claimant's petition for review, the referee issued a supplemental order, which summarized the evidence and concluded that the claim should be denied. The commission reviewed the record and adopted and affirmed the referee's findings, conclusions and decision.

On appeal, the Colorado Court of Appeals reversed the commission's final order and remanded the case for further proceedings to determine the amount of benefits to which the claimant is entitled. The court first addressed the issue of whether Legouffe was required to prove that "unusual exertion" caused his heart attack as suggested by section 8–41–108(2.5), C.R.S.1973 (1982 Supp.), and concluded that such proof is not required in cases where a preexisting heart disease is aggravated by job-related trauma. The court then held that the proper standard of proof on the issue of causation is whether such causal connection is established with reasonable probability rather than reasonable medical certainty, noting that the referee's findings indicate confusion over the proper standard to apply. Finally, the court took judicial notice of certain scientific propositions found in medical treatises and concluded that Dr. Mutz' testimony was based upon an erroneous assumption of scientific fact and therefore could not serve as a basis for the referee's conclusion that no causal connection had been shown. We first address the judicial notice issue and conclude that the court of appeals' judgment should be reversed because of its erroneous application of the judicial notice rule, C.R.E. 201. We agree with the court of appeals' conclusion that the referee's findings indicate confusion in the application of the "unusual exertion" requirement and in the standard of proof the claimant was required to satisfy, and accordingly remand the case for further findings applying appropriate standards.

## I.

In reversing the commission's order denying benefits to the claimant, the court of appeals disregarded the referee's factual finding, based on Dr. Mutz' testimony, that the heart attack was not caused by the electric shock. It did so on the ground that the finding was based upon an assumption contrary to certain propositions of scientific fact of which the court took judicial notice pursuant to Colorado Rule of Evidence 201. We conclude that the court of appeals erred in applying the judicial notice rule to disregard the referee's factual finding; therefore, reversal of that court's judgment is required.

Facts subject to the judicial notice rule are those "not subject to reasonable dispute" and must be either "generally known within the territorial jurisdiction of the trial court" or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." C.R.E. 201(b). Appellate courts, as well as trial courts, may make use of this rule. C.R.E. 201(f). The rule is a codification of existing case law, *Larsen v. Archdiocese of Denver,* 631 P.2d 1163 (Colo.App. 1981), and has traditionally been used cautiously in keeping with its purpose to bypass the usual fact finding process only when the facts are of such common knowledge that they cannot reasonably be disputed. *See Anderson v. Lett,* 150 Colo. 478, 374 P.2d 355 (1962) (conclusions reached by application of mathematical principles cannot be judicially noticed unless such conclusions are irrefutable); *Winterberg v. Thomas,* 126 Colo. 60, 246 P.2d 1058 (1952) (unquestioned laws of mathematics are judicially noticeable); *Sierra Mining Co. v. Lucero,* 118 Colo. 180, 194 P.2d 302 (1948) (calendar days and dates are subject to judicial notice); *People ex rel. Flanders v. Neary,* 113 Colo. 12, 154 P.2d 48 (1944) (the fact that a term of public office was due to expire in a short time was judicially noticed); *see also* Federal Rules of Evidence, Note to Subdivision (b) of Rule 201, Notes of Advisory Committee on Proposed Rules.

The court of appeals relied on medical treatises not offered or admitted into evidence, and not cited by either Dr. Lissauer or Dr. Mutz, for its finding that an

electric shock caused by contact with a 220 volt power line can cause serious injury without leaving a visible burn mark. The court in effect assumed the role of an expert medical witness by discrediting the opinion of Dr. Mutz based on independent research and interpretation of medical texts which properly should be interpreted only by experts in the appropriate field. *See Sayers v. Gardner,* 380 F.2d 940 (6th Cir. 1967); *Ross v. Gardner,* 365 F.2d 554 (6th Cir.1966). To accept the court's substitution of its own fact findings for those of the referee in this instance would expand the judicial notice rule far beyond its intended scope. The court compared the type of facts judicially noticed here with the simple mathematical calculations based on distance and speed in *Winterberg v. Thomas, supra.* The conclusions to be drawn from the scientific propositions cited by the court of appeals, however, are clearly not indisputable, as shown by the conflicting testimony in the present case. Dr. Lissauer and Dr. Mutz, both certified as experts in the field of cardiology, had different opinions about the effects of a 220 volt shock on the human body. Dr. Lissauer stated that, although he could not express an opinion as to the significance of external burns, in his experience he had observed a patient with severe heart damage from electrocution without external burns. Dr. Mutz, on the other hand, expressed his opinion, without citing specific cases, that the lack of visible burn marks on the hands reflects that the shock did not directly damage Legouffe's heart.[4]

■■■ Even if the proposition that a 220 volt shock could cause serious injury without burn marks were widely recognized within the relevant community, the fact that two medical experts have a reasonable dispute over the conclusion to be reached from that proposition—namely, whether Legouffe's heart attack was caused by the shock in this case—makes the court of appeals' disregard of the referee's findings clearly erroneous. As we stated in *Anderson v. Lett, supra:*

> Courts cannot indulge in arbitrary deductions from scientific laws as applied to evidence except where the conclusions reached are so irrefutable that no room is left for the entertainment by reasonable minds of any other conclusion. [Citation omitted.]

150 Colo. at 481–82, 374 P.2d at 357. Dr. Mutz' medical conclusion that Legouffe's heart attack could not have been caused by the shock is entirely consistent with the factual proposition stated by the court of appeals that "serious injury" can result from a 220 volt shock without external burns.[5] The court of appeals has supplied its own conclusion from a scientific proposition that does not compel that conclusion.

## II.

The referee's supplemental order, which was adopted and affirmed by the commission, contains the following finding after summarizing the evidence with regard to the causal relationship between the accident and Legouffe's heart attack:

> Moreover, should a causal connection have been shown between the accidental shock and the myocardial infarction, there is no evidence of unusual exertion as is required by the statute in order that a [sic] accidental heart attack may be compensated.

---

4. The two opinions are not necessarily inconsistent. As previously noted, Dr. Mutz testified that a less severe shock, which would not cause burns, could result in heart damage through ventricular fibrillation, but the claimant's symptoms were inconsistent with such a diagnosis. See note 3, *supra.*

5. *See* notes 3 and 4, *supra.* Additionally we note that the court of appeals has mischaracterized the bases of Dr. Mutz' conclusion that there was no causal connection between the accident and the injury. Our reading of his testimony indicates that the doctor's opinion was based only in part on the lack of external burn marks and that other factors, including the nature and extent of Legouffe's preexisting disease, influenced his conclusion. Thus, even if we accept the court of appeals' use of judicial notice, the facts noticed are not sufficient to undercut the doctor's opinion and the referee's conclusions drawn from the evidence as a whole.

The court of appeals noted that this finding may indicate that the referee was improperly imposing a requirement on the claimant to show a causal connection between the heart attack and both the accidental shock and an unusual exertion within the scope of his employment. We agree with the court of appeals that Legouffe was not required to prove an unusual exertion and that this apparent confusion in the referee's order, along with other ambiguities in the referee's findings as noted in part III of this opinion, require remand of this case for further findings and conclusions by the referee, applying appropriate legal standards.

The Workmen's Compensation Act of Colorado provides the following definitions of accidental injuries compensable under the act:

(1) "Accident" means an unforeseen event occurring without the will or design of the person whose mere act causes it; an unexpected, unusual, or undesigned occurrence; or the effect of an unknown cause or, the cause being known, an unprecedented consequence of it.

\* \* \* \* \* \*

(2.5) "Accident", "injury", and "occupational disease" shall not be construed to include disability or death caused by heart attack unless it is shown by competent evidence that such heart attack was proximately caused by an unusual exertion arising out of and within the course of the employment.

Section 8–41–108(1) and (2.5), C.R.S.1973 (1982 Supp.).

There is no dispute in the present case that the electric shock received by Legouffe falls within the definition of "accident" under section 8–41–108(1) such that any injuries proximately caused thereby are compensable. The fact that the resulting injury here was a heart attack requires us to examine the effect of section 8–41–108(2.5), which specifically refers to cases involving injury or death from heart attack.

█ In applying section 8–41–108(2.5), where no accident as defined by section 8–41–108(1) has occurred, we have required that the claimant prove that the heart attack was proximately caused by an unusual or extraordinary overexertion arising out of the claimant's employment. *Denver v. Industrial Commission,* 195 Colo. 431, 579 P.2d 80 (1978); *see Townley Hardware Co. v. Industrial Commission,* 636 P.2d 1341 (Colo. App.1981); *Beaudoin Construction Co. v. Industrial Commission,* 626 P.2d 711 (Colo. App.1980). The intent of the legislature in enacting the unusual exertion requirement was to place the law as it existed before a 1965 amendment to the statute that had abolished such requirement; the legislature wished to ensure that only those heart attack-related injuries resulting from more than the normal work activities of the claimant are compensable. *See Public Service Co. v. Industrial Commission,* 189 Colo. 153, 538 P.2d 430 (1975); *T & T Loveland Chinchilla Ranch, Inc. v. Bourn,* 178 Colo. 65, 495 P.2d 546 (1972). Prior to the 1965 amendment, an injury from a heart attack was compensable if it was proximately caused by either a work related accident or unusual exertion. *See Industrial Commission v. Hesler,* 149 Colo. 592, 370 P.2d 428 (1962); *Marotte v. State Compensation Insurance Fund,* 145 Colo. 99, 357 P.2d 915 (1960); *Industrial Commission v. Havens,* 136 Colo. 111, 314 P.2d 698 (1957). An interpretation of the present statute to require a showing of overexertion in accident cases would lead to the absurd result of allowing compensation for all types of injuries proximately caused by industrial accidents except for heart attacks. Accordingly, we agree with the court of appeals that, where the claimant alleges that his heart attack was causally related to an accident as defined by section 8–41–108(1), the claimant is not required to show that the injury was also causally related to overexertion.

### III.

The court of appeals sought to clarify the standard of proof applicable in workmen's compensation cases, stating that the referee's orders indicate possible confusion as to the appropriate standard. We agree with

this assessment of the referee's orders and conclude that this case should be remanded to the commission for further review and findings by the referee so that the correct standard may be applied.

■ The referee's initial order expressly applied a preponderance of the evidence standard of proof, but his supplemental order did not state the standard applied. In the latter order, the referee made the following findings:

b) The evidence presented by claimant is [sic] satisfaction of the burden of proof upon him to show a causal connection between the myocardial infarction and the electric shock is based upon possibilities and conjectures.

c) The evidence to the contrary that there is no causal connection was firmly stated and appears to be within a reasonable medical probability. . . .

The claimant in a workmen's compensation case has the burden of proving his entitlement to benefits by a preponderance of the relevant evidence. *State Compensation Insurance Fund v. Kindig,* 167 Colo. 32, 445 P.2d 72 (1968); *Baca County School District v. Brown,* 156 Colo. 562, 400 P.2d 663 (1965).[6] The findings and conclusions in the referee's supplemental order, which were later adopted and affirmed by the commission, are sufficiently ambiguous to make it unclear whether the referee applied the preponderance of the evidence standard. Moreover, as noted in part II of this opinion, the referee erroneously relied to some extent on absence of unusual exertion in reaching his conclusion that the injury was not compensable. On the basis of this record we deem it inappropriate to speculate whether the referee's order was based on the proper standards. Rather, we find it advisable to remand the case so that the referee may evaluate his findings and conclusions in light of the guidance provided by this opinion.

## IV.

■ The referee's findings in this case are based on conflicting evidence and are binding on review if they are supported by evidence in the record. *American Metals Climax, Inc. v. Cisneros,* 195 Colo. 163, 576 P.2d 553 (1978). The bases of the expert medical opinions given by the two doctors are not open to question by resort to the judicial notice rule. Accordingly, we decline to question the findings of the referee except to the extent that we have noted ambiguities in those findings as explained in parts II and III of this opinion. We return the case to the court of appeals for remand to the commission. The commission should direct the referee to apply the legal standards set forth in this opinion in making his fact findings, with leave to reopen the proceedings for presentation of further evidence if deemed necessary by the referee in order to achieve full compliance with the views expressed in this opinion.

---

**6.** We do not agree with the court of appeals' characterization of the claimant's burden of proof on the issue of causation, and therefore proceed to clarify this matter. The court of appeals' opinion suggests that the proper standard of proof on the issue of causation is that the claimant produce sufficient evidence to support a "reasonable probability" that the accident precipitated the injury. This is a proper statement of the standard to be applied by the commission and reviewing courts in determining whether the referee's finding of a causal connection between the accident and injury should be upheld, giving deference to the referee's function as the finder of fact. *Public Service Co. v. Industrial Commission, supra; Industrial Commission v. Havens, supra; Industrial Commission v. Royal Indemnity Co.,* 124 Colo. 210, 236 P.2d 293 (1951). However, the appropriate burden of proof that the claimant must satisfy at the hearing on his claim to establish entitlement remains the preponderance standard.