IML FREIGHT, INC., and Transport Underwriters Company, Petitioners,

v.

INDUSTRIAL COMMISSION OF the STATE OF COLORADO, Director, Department of Labor and Employment, Division of Labor, State of Colorado and David Garcia, Respondents.

No. 82CA1115.

Colorado Court of Appeals, Div. II.

June 2, 1983.

Rehearing Denied June 30, 1983.

Certiorari Denied Jan. 30, 1984.

---

Greengard, Blackman & Senter, Lawrence D. Blackman, Scott R. Cook, Denver, for petitioners.

Douglas R. Phillips, Denver, for respondent David Garcia.

J.D. MacFarlane, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Robert C. Lehnert, Asst. Atty. Gen., Denver, for respondents Indus. Com'n, Dept. of Labor and Employment, and Div. of Labor.

STERNBERG, Judge.

IML Freight, Inc., (the employer) and Transport Underwriters Co. seek review of a final order of the Industrial Commission awarding permanent total disability benefits to the claimant, David Garcia. We affirm.

Garcia was employed as a line driver by IML. He made bi-weekly trips between Denver and Chicago accompanied by a partner. From January 1980 until April 23, 1980, he worked approximately 105 hours

per week, which working schedule included alternating periods of driving and rest in 4½ to 5 hour intervals. Garcia slept in the truck's sleeping berth during his periods while his partner drove.

Garcia testified that during a trip commencing on April 23, 1980, his right eye began to move back and forth rapidly, and he developed pain in the back of his head. When he attempted to climb into the sleeping berth, he experienced problems with his left arm and leg and had to be assisted into the berth by his partner. When Garcia awoke from his sleep period he could not move his left arm or leg. He was hospitalized in Nebraska and later was transferred to Denver.

The medical experts agreed that claimant had suffered a "cerebral vascular accident," a stroke, as a result of a complete blockage of the internal carotid artery. They disagreed in part, however, as to the cause of the stroke. Although Garcia's physician was unable to identify positively the reason for the complete blockage, he testified that in a person of Garcia's age, 43, who has a genetic propensity toward vascular disease, there is a reasonably good probability that job stress akin to that experienced by Garcia would contribute to the onset of a stroke.

The employer's doctor, who had examined Garcia, opined that the stroke was not causally related to the employment. The basis for his opinion was that the type of stroke involved here was a result of a gradual accumulation of cholesterol within the carotid artery. The doctor noted that the type of stroke suffered by claimant usually occurred when the person was asleep. He further testified that job stress had nothing to do with the accumulation of cholesterol and the type of stroke which Garcia suffered.

The referee found, *inter alia*, that Garcia was in the course and scope of his employment when the stroke occurred, and that job stress was a "significant" causal factor in the stroke. The referee also found that Garcia was not exposed to such stressful conditions outside of his employment. The referee concluded that Garcia had suffered a stroke arising from an "accident" in the course of his employment.

The Commission affirmed these findings and conclusions accompanied by a dissenting opinion which reasoned that Garcia suffered from a disease which was not connected to his employment by an adequate degree of causation.

On appeal, the employer contends that claimant did not meet his burden of proving a reasonable connection between the work and the injury. We disagree.

■ To warrant a finding of causal connection, facts and circumstances must be shown which would indicate that the injury resulted from the employment. *See Public Service Co. v. Industrial Commission,* 189 Colo. 153, 538 P.2d 430 (1975). Here, one physician testified that there was a reasonably good possibility of a causal connection and another testified to the contrary. The first expert's testimony taken together with Garcia's testimony satisfied this burden of proof.

■ We agree with the dissenting opinion, however, that Garcia's injury, the stroke, resulted from a disease and not an accident. But, because the referee found as a factual matter that there was a causal relation between job stress and the stroke, the disease falls within the definition of an occupational disease, and was compensable under the Act. *See* §§ 8–41–108(3) and 8–52–102(1)(c), C.R.S.1973 (1982 Cum.Supp.).

■ An occupational disease is one "which results directly from the employment or the conditions under which work was performed, which can be seen to have followed as a natural incident of the work and as a result of the exposure occasioned by the nature of the employment, and which can be fairly traced to the employment as a proximate cause and which does not come from a hazard to which the work-

er would have been equally exposed outside of the employment." Section 8–41–108(3), C.R.S.1973 (1982 Cum.Supp.). Also, if employment conditions acted upon a claimant's pre-existing weakness so as to disable him he has a compensable occupational disease. *Denver v. Hansen,* 650 P.2d 1319 (Colo.App.1982).

■ Both physicians testified that several factors would have to combine to cause the stroke. In the opinion of the physician relied upon by the hearing officer, Garcia's job stress could have combined with a pre-existing condition to precipitate the stroke. Thus, even though claimant's employment conditions acted upon a pre-existing weakness, the referee's findings support the conclusion that it was an occupational disease.

The conditions for recovery set forth in § 8–52–102(1)(a), C.R.S.1973 (1982 Cum. Supp.) require that the employee be performing service in the course of his employment, and that the injury be proximately caused by an occupational disease arising out of and in the course of his employment. The referee found the necessary causal relationship between the stroke and the employment, and it is immaterial that that finding was based on the assumption that injury was caused by an "accident" instead of an occupational disease. *CF & I Steel Corp. v. Industrial Commission,* 650 P.2d 1332 (Colo.App.1982).

The findings are based on conflicting evidence and, being supported by the evidence in the record, are binding on review. *See Prestige Homes, Inc. v. Legouffe,* 658 P.2d 850 (Colo.1983).

Order affirmed.

PIERCE and SMITH, JJ., concur.